LEE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 144. Argued October 31, 1974.—Decided November 26, 1974.*
(Also reported in 223 N. W. 2d 455.)

650

For the plaintiff in error there was a brief by *Laurence E. Norton, II,* and oral argument by *Dennis W. Egre,* both of the Legal Aid Society of Milwaukee.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. Trial counsel for the defendant did not request any jury instruction on intoxication as a

defense. Trial counsel for the defendant did not object to the jury instructions as given by the trial court, with no reference to intoxication as a defense. Postconviction counsel for the defendant urges that we find error in the trial court's not instructing the jury as to intoxication as a defense.

Four cases in this state deal with this juxtaposition of (1) failure to request, (2) failure to object, and (3) failure to give an instruction as to intoxication as a defense. The first such, the *Flowers Case,* held that a defendant who does not request an instruction as to intoxication "has no standing" to object to such instruction not being given.[1] The second case, the *Mitchell Case,* involving self-defense, held that neither the defendant nor his counsel may listen to jury instructions without objecting and subsequently claim error in such instructions as a matter of right.[2] The third, the *Pamanet Case,* held that, where no instruction as to intoxication was requested, no error resulted from failure to include such instruction.[3] The fourth case, the *Schenk Case,* cited the earlier three hold-

---

[1] *Flowers v. State* (1969), 43 Wis. 2d 352, 361, 168 N. W. 2d 843, this court stating: ". . . However, no instruction was requested in regard to intoxication causing physical incapacity. The defendant has no standing to voice this objection."

[2] *Mitchell v. State* (1970), 47 Wis. 2d 695, 700, 177 N. W. 2d 833, this court stating: "Additionally, it can be said that neither defendant personally, nor through his counsel, should be permitted to listen to jury instructions being presented to the jury which he or his counsel believe to be inaccurate or incorrect and await the return of the verdict and, if unfavorable, then complain as a matter of right."

[3] *Pamanet v. State* (1971), 49 Wis. 2d 501, 510, 182 N. W. 2d 459, this court stating: ". . . Error is claimed in the failure to instruct the jury that intoxication was a defense. The case was tried for the defendant on the theory of self-defense, not on the claim of intoxication to the degree negativing the existence of a state of mind essential to the crime. No instruction as to intoxication was requested. It was not error to fail to include such instruction. . . ."

ings as authority for the rule that: ". . . The failure to request an instruction on intoxication as a defense, *i.e.,* negativing a state of mind essential to the crime, precludes a defendant from raising the issue here as a matter of right." [4]

The alternatives facing trial counsel for the defendant in this case make crystal clear the reason for the rule requiring request or objection as a prerequisite to challenging the omission of an instruction as a matter of right. The rule with its requirement is not a penalty on oversight or inadvertence. The rule and requirement prohibit one game plan being used at the time of trial, and a different game plan being substituted on appeal. As a matter of trial tactic or strategy, defendant's trial counsel had good reason not to seek inclusion of an instruction as to intoxication in the court's instructions to the jury. The defense attorney's contention was that a variety of factors, all stimulated by intoxication, created a heat of passion that made manslaughter,[5] not first-degree murder, the appropriate jury verdict. The factors relied upon included defendant's marital difficulties, his involvement with the girl friend, his forging of the check with and for her, her telling him that what she did that night was her business, and her walking away from him and out of the tavern. The defense contention was that these factors, stimulated by his intoxication, resulted in a killing in the heat of passion rather than a murder with intent.

A turn-of-the-century case in this court is authority for the defense to the charge of first-degree murder thus asserted and specific authority for reliance upon a "passion stimulated by intoxication." [6] To have sought

---

[4] *Schenk v. State* (1971), 51 Wis. 2d 600, 606, 187 N. W. 2d 853.

[5] Sec. 940.05 (1), Stats., defining the crime of manslaughter as including causing the death of another ". . . Without intent to kill and while in the heat of passion. . . ."

[6] *Hempton v. State* (1901), 111 Wis. 127, 142, 86 N. W. 596, this court holding: ". . . Now, if from passion, stimulated by in-

and secured an instruction on intoxication as a defense would have placed defendant's trial counsel in the position of simultaneously arguing to the jury that: (1) The defendant acted in the heat of passion, stimulated by intoxication; and (2) the defendant acted without intent (or passion) because he was so stupefied by intoxication that he was unable to form an intent. The practical drawback to arguing both positions to the same jury at the same time is evident. Trial counsel would have had to argue that his client was (1) stimulated by intoxication, and (2) stupefied by intoxication. Given such alternative contentions, the jury might be inclined to find merit in neither.

Trial counsel for the defendant elected, as a matter of trial tactic or strategy, to go to the jury on the theory of a heat of passion, stimulated by intoxication, ". . . electing not to dilute such defense with the claim of the high degree of intoxication necessary to negative the existence of a state of mind required by the offense. He was not required to do so. . . ." [7] The challenge on appeal is not to the right of trial counsel to make such tactical decision. It could not be.[8] Rather, postconviction

---

toxication, or from any other cause, a person, for the moment, is unable to exercise his reason, and while he is in such condition, though conscious of what he is doing and not so completely bereft of reason as to be legally irresponsible, he is uncontrollably moved thereby to and does wrongfully kill another, he cannot be convicted of murder in the first degree." Citing *Clifford v. State* (1883), 58 Wis. 477, 17 N. W. 304.

[7] *Pamanet v. State, supra,* footnote 3, at pages 511, 512.

[8] *Kain v. State* (1970), 48 Wis. 2d 212, 221, 179 N. W. 2d 777, this court stating: "What postconviction counsel is in effect arguing is that trial counsel may not thus select the most persuasive theory to sustain acquittal and is required to pursue any and all roads, however uninviting, that might lead to creating doubt in the minds of the jury. This . . . would require hunting always with a shotgun, never with a rifle. In this case it would require trial counsel to argue to the jury (1) that his client had not been in the tavern; and (2) that, even if he had

counsel would have us locate a duty on the part of the trial court to add an instruction on intoxication as a defense, even though defense trial counsel elected not to do so. The trial court, in the absence of request or objection, would be thus directed to add the claim of a degree of intoxication making intent impossible to the selected defense theory of intoxication stimulating a heat of passion. The result, this court has said, could "perhaps lead them [the jurors] to conclude that any other defense has no more substance than the one added against the best judgment of trial counsel." [9] Regardless of result, the decision not to request an instruction as to intoxication clearly ". . . falls within the area of trial tactics, and it is the considered judgment of trial counsel that makes the selection among available defenses . . . ." [10] There were two baskets available and defendant through trial counsel elected to put all of his eggs in, as they saw it then, the stronger-bottomed basket of the defense of a heat of passion, stimulated by intoxication. We do not find the trial court obliged to add the other basket of intoxication as a defense, into which the jury might move the eggs. To do so here would be to take from defendant and his trial counsel the right to elect and select between available theories of defense. To do so here would ". . . strip from defendant and his trial counsel alike the right to elect and select a particular defense as the most maintainable. . . ." [11] Such right and responsibility to

been, someone else might have taken the money. Trial counsel is not required to assert an untenable defense because postconviction counsel, predictably almost, will later claim that such defense should should have been asserted. . . ."

[9] *Id.* at pages 221, 222, this court stating: ". . .To do so [assert an inconsistent theory of defense] at least diverts the jury's attention, perhaps leads them to conclude that any other defense has no more substance than the one added against the best judgment of trial counsel. . . ."

[10] *Id.* at page 222.

[11] *Id.* at page 221.

select the particular defense or defenses most maintainable is the reason for the *Pamanet-Schenk* rule requiring request or objection as the basis for claiming error in the omission of a particular instruction to a jury. It is also reason for adhering to such rule and applying it here to deny defendant's right to now challenge the omission of an instruction on intoxication as a defense where he did not request such instruction at time of trial.

Postconviction counsel would have this court, in the exercise of its judicial discretion, waive the requirement of a request made at time of trial as the basis for challenge as to an omitted instruction. By thus waiving the waiver, we would proceed to review the record here as if an instruction as to intoxication as a defense had been requested by the defendant and had been denied by the trial court. This was done in *Schenk*,[12] with this court there concluding that ". . . the trial court would have been justified in refusing a request for the instruction [as to intoxication], if such had been made, let alone giving the instruction sua sponte."[13] There this court went beyond the testimony as to quantities of intoxicants consumed,[14] to a review of what transpired both before and after the fatal stabbing.[15] As to the circumstances

---

[12] *Schenk v. State, supra,* footnote 4, at pages 606, 607.

[13] *Id.* at page 608.

[14] *Id.* at page 607, the defendant's oral confession stating that he "figured he had about 15 bottles of beer," and "four or five brandies and coke." *See also: State v. Nemoir* (1974), 62 Wis. 2d 206, 210, 214 N. W. 2d 297, this court holding: ". . . The question for the trier of fact was not whether the defendant had been drinking, and how much, but whether there was such degree of intoxication as 'negatives the existence of a state of mind essential to the crime.'" Citing sec. 939.42, Stats.

[15] *Id.* at page 608. *See also: State v. Nemoir, supra,* footnote 14, at page 211, this court holding: "Capacity or incapacity to form the requisite intent may be inferred from the acts and conduct of a defendant as well as from testimony given by defendant or witnesses on his behalf. . . ."

surrounding the fatal shooting here, the conversation of defendant and the victim immediately prior to the killing, the five shots fired, and the defendant's thereafter partially disassembling the revolver used, raise doubts as to the degree of intoxication being sufficient to render him "'utterly incapable of forming the intent requisite to the commission of the crime charged.'" [16] However, we make no finding on the claim that this record raises or would support a finding of lack of intent due to intoxication. Applying the rule of a required objection at the time of trial makes unnecessary and inappropriate any review of this record where the requirements of the rule were not met.

In the case before us, we apply the rule of no standing to challenge on appeal the omission of an instruction that was not requested at the time of trial. We do so to make clear that it is the right of a defendant and trial counsel to select the particular defense, from among the alternatives available, upon which they elect to rely. [17] To permit postconviction counsel to argue for a different game plan, after the contest is over, would be Monday-morning quarterbacking, [18] whether directed at the trial counsel as

---

[16] *State v. Nemoir, supra,* at pages 210, 211, this court holding: ". . . In a first-degree murder case, intoxication is not a defense if defendant still possessed the requisite intent to kill. The degree of intoxication required is such degree that the person is 'utterly incapable of forming the intent requisite to the commission of the crime charged.'" Quoting *State v. Guiden* (1970), 46 Wis. 2d 328, 331, 174 N. W. 2d 488, this court there also stating: ". . . The 'intoxicated or drugged condition' to which the statute refers . . . is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. . . ." (Referring to sec. 939.42, Stats.)

[17] *Kain v. State, supra,* footnote 8, at page 222, this court holding: ". . . [I]t is the considered judgment of trial counsel that makes the selection among available defenses, not the retroactive conclusion of postconviction counsel. . . ."

[18] *Id.* at page 222, this court stating: ". . . On Mondays it is always easy to suggest a different signal that quarterback in

quarterback, or, as here, at the trial court as referee. Where trial counsel elected to go to the jury on the defense of a heat of passion, stimulated by intoxication, the trial court was not required to add the defense of intoxication to a degree negativing intent. It was not error for the trial court here to omit an instruction on intoxication as a defense where no such instruction was requested.

*By the Court.*—Judgment affirmed.

---

the weekend football game might better have called. . . ." *See also: Pamanet v. State, supra,* footnote 3, at page 511, this court observing: ". . . It is always easy to suggest a different game plan after the contest is concluded. . . ."