STATE of Wisconsin, Plaintiff-Respondent,

v.

Bradley John POTH, Defendant-Appellant.

Supreme Court

*No. 81–1230. Argued June 3, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 115.)

For the defendant-appellant there was a brief and oral argument by *Gerald P. Boyle* of Milwaukee.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J.   This is an appeal from an order of the circuit court for Sheboygan county which denied the defendant's motion for post-conviction relief pursuant to sec. 974.06(1), Stats.[1] This court granted the State's pe-

---

[1] Sec. 974.06(1), Stats, reads:

"**974.06 Post-conviction procedure.** (1) After the time for appeal or post-conviction remedy provided in s. 974.02 has expired,

tition to bypass the court of appeals under sec. 808.05 (1).[2]

The defendant, Bradley John Poth, was charged with first-degree murder in the shooting death of his wife, Jacqueline. The couple had been married in February, 1972. Their marriage was a stormy one, marked by numerous arguments and some physical altercations. In July of 1974, the defendant vowed he would never strike Jacqueline again. He kept this vow until immediately before the shooting on May 22, 1977. Despite this promise, the parties separated in August of 1974, and Jacqueline served him with divorce papers. The defendant learned that his wife had been involved in several extramarital affairs with other men, but he still attempted to become reconciled with her. In December, 1975, they resumed living together, but on February 20, 1976, Jacqueline left him again. This pattern continued for the next year, with the couple reconciling and then breaking up again on several occasions.

During May, 1977, they attempted to resume their marriage once again. On May 22nd they went to a picnic with some friends. An argument developed and Jacqueline became very upset and demanded that they leave. As they drove away in the defendant's van, Jacqueline

a prisoner in custody under sentence of a court claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

[2] Sec. 808.05(1), Stats., provides:

"808.05 **Bypass.** The supreme court may take jurisdiction of an appeal or any other proceeding pending in the court of appeals if:

"(1) It grants direct review upon a petition to bypass filed by a party."

was extremely angry and upset. She shouted at Poth, scratched and hit him. She demanded that he stop the van. When he did so, she jumped out. He followed her and she continued to yell at him and to strike him. Thereupon he broke his "vow" and hit her several times in the face. Poth testified that this was all he remembered about the incident until later, when he recalled driving on the freeway towards Milwaukee.

At trial, a witness described what happened when the shooting occurred. The witness saw Jacqueline cross the road, crying for help. She then saw the defendant walk to the van, pull out a gun and walk at a normal pace towards his wife, with the gun pointed at her. He fired three times and then walked back to the van and drove away at a normal rate of speed.

The defendant did not deny killing his wife. His defenses at trial were that he was not responsible for his actions because he suffered from a mental disease or defect, and alternatively, that he acted in the heat of passion and was thus only guilty of manslaughter. A jury trial was waived and the court found him guilty of second-degree murder and sentenced him to a term of 20 years. The court found Poth not guilty of first-degree murder because it found a reasonable doubt as to his ability to form the specific intent necessary for first-degree murder.[3] It found that his conduct did evince a depraved mind, regardless of human life, as required for second-degree murder.[4] The court considered and rejected the

[3] Sec. 940.01, Stats., states:

"940.01 **First-degree murder.** (1) Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being."

[4] Sec. 940.02, Stats., provides:

"940.02 *Second-degree murder.* Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

possibility of finding him guilty of the lesser offense of heat of passion-manslaughter.[5] In explaining its reasoning, the court stated in part, "The Court has rejected manslaughter because I am not convinced beyond a reasonable doubt that there was a reasonable or adequate provocation if one uses the standard of the ordinary man which is mandated by the case law in this state."

Poth appealed to the court of appeals, which affirmed the conviction. He then petitioned this court for review, arguing for the first time that the above-quoted statement by the trial court indicated that the court had unconstitutionally shifted the burden to him to prove that adequate provocation existed to justify a conviction on the lesser crime of manslaughter. This court declined to grant the petition for review. The defendant then raised this constitutional issue in a petition for a writ of habeas corpus to the United States District Court for the Eastern District of Wisconsin. The district court ruled that Poth had not exhausted his state law remedies because he had not raised this constitutional argument to the trial court or to the court of appeals. The district court ruled that sec. 974.06, Stats., *supra,* provided an appropriate method to raise this issue in the state courts and should therefore be employed. Poth appealed the denial of the writ to the United States Court of Appeals for the Seventh Circuit, but subsequently filed a notice of voluntary withdrawal of appeal.

In February, 1981, the defendant made a motion in the trial court, pursuant to sec. 974.06, Stats., to vacate

"(1) By conduct imminently dangerous to another and evincing a depraved mind, regardless of human life."

[5] Sec. 940.05, Stats., states:

"**Manslaughter.** Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony:

"(1) Without intent to kill and while in the heat of passion."

the conviction. He argued that the trial court had improperly shifted the burden of proof to him on the manslaughter issue, in violation of his due process rights. the court denied the motion, acknowledging that it had made a misstatement in ruling on the question of manslaughter. Judge Deehr, the trial judge, explained that he had not shifted the burden of proof from the State to the defendant. He attempted to state, in his oral decision, that he was satisfied beyond a reasonable doubt that there was no reasonable or adequate provocation which would properly give rise to the heat of passion. Judge Deehr had previously explained this misstatement in an affidavit submitted by the State in opposition to the defendant's petition for habeas corpus in the federal district court.

Poth appealed this denial of the motion for postconviction relief to the court of appeals. This court then granted the State's petition to bypass the court of appeals.

This case brings up the issue of the proper allocation of the burden of proof when a defendant claims that his conduct amounted to heat of passion-manslaughter, instead of first or second-degree murder. This question is also presented in two similar cases which we decide today (July 2, 1982), *State v. Lee*, 108 Wis. 2d 1, 321 N.W. 2d 108 (1982), and *State v. Oliver*, 108 Wis. 2d 25, 321 N.W.2d 119 (1982). In *Lee*, we discussed the confusion that has arisen in this state over the distribution of the burden of proof when heat of passion is at issue. We held in *Lee* that when a defendant introduces sufficient evidence to raise the issue of heat of passion-manslaughter, the State must prove beyond a reasonable doubt that the heat of passion did not exist.

In this case we believe that the trial court correctly applied this standard, despite misstating it. The defendant essentially relies on the single statement by Judge

Deehr, quoted above. If we were convinced that the court had actually placed the burden on the defendant to prove heat of passion, then a reversal would be in order. However, several factors persuade us that this was merely a misstatement.

First and most important is the sworn statement by Judge Deehr. In it he clearly states that the quoted statement in question was a misstatement, made while orally announcing his findings of fact and conclusions of law. He ruled from the bench without the benefit of a formal written decision or outline. Judge Deehr states in the affidavit that "the Court was in fact attempting to state, as indicated in other parts of the transcript, that it was satisfied beyond a reasonable doubt that there was no reasonable or adequate provocation which would give rise to the element of heat of passion." Absent this affidavit, it would be more difficult to ascertain whether the court actually recognized the proper standard. In this case, however, we attach substantial credence to the sworn affidavit of the trial judge, setting forth that this was merely a misstatement.

Furthermore, the context of the judge's statements supports the conclusion that he correctly placed the burden on the State. The trial court consistently placed the burden of proof on the State in ruling on the other possible charges. It held that it could not conclude beyond a reasonable doubt that Poth possessed the specific intent necessary for first-degree murder. In finding Poth guilty of second-degree murder, the judge stated that he was satisfied "and the Court is talking in terms beyond a reasonable doubt" that his conduct evinced a depraved mind.

It is also significant that the court's misstatement involved the "beyond a reasonable doubt" standard. The arguments in this case, as well as in *Lee* and *Oliver*, have focused on whether the State or the defendant should

bear the burden of proof on the heat of passion issue. But it has never been suggested to this court that if the burden is to be placed on a defendant, then he must prove the issue beyond a reasonable doubt. In arguing that the burden rests on a defendant, the State has consistently claimed that the proof would have to be by a preponderance of the evidence standard. It would be inconceivable to suggest that a defendant would have to prove this issue beyond a reasonable doubt. We do not believe that the trial court made an error of this sort. Had the court spoken in terms of a preponderance standard, then it may have been more likely that it was placing the burden on the defendant. But the very use of the reasonable doubt standard lends support to our conclusion that the court simply misstated its rationale.

Finally, the facts the trial court found were entirely consistent with a conclusion beyond a reasonable doubt that adequate provocation for the heat of passion did not exist. As we explained in *Lee,* adequate provocation encompasses both subjective and objective components. *Lee, supra,* at p. 12. The provocation must be sufficient to cause a reasonable person to act in the heat of passion. In this case the court found "no justification for this killing. Any act of aggression by the deceased had terminated. The fight was over. The Court could not find that there was such provocation when one considers the psychological or physical harm that the defendant may have sustained at the hands of the deceased." The court also stated that: "The physical injuries sustained by the defendant as a result of the hair pulling, the scratching, were insignificant. The deceased's statements to the defendant did not seem to be any different than statements she made, or conduct she undertook which would indicate such feelings as were then voiced on a

number of occasions during the course of their marriage so as to magnify this particular instance so as to constitute the degree of provocation necessary to make manslaughter appropriate." The court also considered it significant that the defendant slowly walked from the van towards his wife, fired the gun, and turned to walk away in a normal or slow fashion. These slow, deliberate movements were characterized by the court as not being the actions of a person in the heat of passion.

Our opinion of today in *State v. Lee, supra,* which provides that when the defendant has come forward with evidence sufficient to raise the issue of heat of passion the burden is upon the State to disprove adequate provocation beyond a reasonable doubt, controls the legal issue raised herein.

We conclude, therefore, that the trial court simply misspoke when it appeared to place the burden of proof on the defendant. The findings made by the judge are consistent with his explanation in the affidavit that he correctly placed the burden of proof on the State.

*By the Court.*—Order affirmed.