STATE of Wisconsin, Plaintiff-Respondent,

v.

John Lewis LEE, Defendant-Appellant-Petitioner.

Supreme Court

*No. 81–227. Argued June 3, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 108.)

2

For the defendant-petitioner there was a brief (in court of appeals) and a reply brief (in supreme court) by *Ben Kempinen,* supervising attorney, Legal Assistance to Institutionalized Persons Program, of Madison, and oral argument by *Mr. Kempinen.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Amicus curiae brief was filed by *David E. Schultz,* of Madison, Reporter, Wisconsin Criminal Jury Instructions Committee.

BEILFUSS, C.J. This is a review of a decision of the court of appeals which affirmed an order denying a motion for a new trial pursuant to sec. 974.06(1), Stats.[1]

The petitioner, John Lewis Lee, was convicted of first-degree murder in 1972. His conviction was affirmed by

[1] "974.06 **Post-conviction procedure.** (1) After the time for appeal or post-conviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

this court in 1974 in *Lee v. State,* 65 Wis. 2d 648, 223 N.W.2d 455 (1974). In 1979, Lee filed a motion for post-conviction relief under sec. 974.06, Stats. The trial court, Honorable Leander J. Foley, Jr., denied the motion and the court of appeals affirmed.

The issues in this case, as well as in the similar cases of *State v. Poth,* 108 Wis. 2d 17, 321 N.W.2d 115 (1982), and *State v. Oliver,* 108 Wis. 2d 25, 321 N.W.2d 119 (1982) (mandated July 2, 1982), involve the distinction between first-degree murder, defined in sec. 940.01, Stats., and manslaughter committed in the heat of passion, contrary to sec. 940.05(1). We conclude that when a defendant introduces sufficient evidence to raise the issue of heat of passion, the burden falls upon the State to prove beyond a reasonable doubt that the defendant did not act in the heat of passion.

The record in this case reveals the following facts:[2] Lee was married and had two children when he met Shirley Adams on January 8, 1972. He started to associate with her and saw her often over the next several weeks. On February 2d he forged a check for $200 from the fraternal lodge of which he was the treasurer, giving Adams some of the proceeds. On that same date, Lee's wife discovered Lee and Adams together in a tavern. Lee and his wife engaged in a heated argument which continued intermittently until February 4th, the day the shooting occurred.

Lee seems to have spent most of the afternoon of February 4th drinking in several taverns. He also took four prescription pills for relief from asthma. At approximately 5 p.m., he returned home and again argued with his wife. He agreed to leave the house if his wife would give him his revolver. He took the gun and resumed drinking at several bars. At about 9:45 p.m., he went

[2] A more complete statement of facts appears in 65 Wis. 2d 648, 223 N.W.2d 455 (1974).

to the Flamingo Tavern where he encountered Shirley Adams. They quarreled and she left the bar with Lee following her. Their argument continued outside until she dared him to shoot her. Lee fired several shots at her; five bullets were recovered from her body.

Lee was arrested and at trial the jury was instructed as to first and second-degree murder and the heat of passion-manslaughter. The jury returned a verdict of first-degree murder.

On appeal to this court, Lee argued that the trial court erred in not giving an instruction, *sua sponte,* to the jury on intoxication as a defense. This court held that the defense had elected as a strategic choice to pursue the theory that Lee had acted in the heat of passion, stimulated by intoxication, rather than claiming that he had been so intoxicated that he lacked the requisite state of mind for commission of the offense. Therefore, we held that the trial court was not required to act on its own initiative and give the instruction for the alternative defense. *Lee v. State,* supra at 655–58.

In July of 1979, Lee filed a motion challenging his conviction under sec. 974.06, Stats. His principal argument was that the trial judge misread the heat of passion-manslaughter instruction, which shifted the burden to him to show the presence of heat of passion, in violation of due process. The trial court denied the motion, ruling that the evidence failed to show adequate provocation to support a manslaughter verdict, and thus the instruction on manslaughter should not even have been given. The court of appeals agreed, affirming the denial of the motion. In order to attempt to resolve the confusion between manslaughter as contrasted to first or second-degree murder, this court granted the petition for review.

The issue in this case arises as a result of inconsistencies between the homicide statutes, the Wisconsin Jury

Instructions uniformly given in cases of this type, and past decisions of this court.

Sec. 940.01, Stats., defines first-degree murder as causing "the death of another human being with intent to kill. . . ." This intent is further defined in sub. (2) as "the mental purpose to take the life of another human being." Sec. 940.02 describes second-degree murder as a killing perpetrated by an act imminently dangerous to others and evincing a depraved mind, regardless of human life. The manslaughter statute involved in this case is sec. 940.05(1), which states: "Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony: (1) Without intent to kill and while in the heat of passion."

At the trial in this case the jury was instructed on first- and second-degree murder and on manslaughter. The pattern Wisconsin Criminal Jury Instruction, #1130, was given. This instruction first defines the elements of first and second-degree murder. It then informs the jury about the crime of manslaughter:

### "1130 MANSLAUGHTER: HEAT OF PASSION: FIRST AND SECOND DEGREE MURDER SUBMITTED

"Manslaughter, as defined in section 940.05(1) of the Criminal Code of Wisconsin, is committed by one who causes the death of another human being without intent to kill and while in the heat of passion.

"Before the defendant may be found guilty of manslaughter while in the heat of passion, you must be satisfied by the evidence beyond a reasonable doubt that there were present all of the elements of either first degree murder or of second degree murder as I have defined them to you, except that you find that the defendant killed . . . while in the heat of passion caused by a reasonable, adequate provocation, or you have a reasonable doubt thereof.

"The phrase 'heat of passion,' which under the Criminal Code will reduce what would otherwise be murder to manslaughter, is such mental disturbance caused by a reasonable, adequate provocation, as would ordinarily so overcome and dominate or suspend the exercise of the judgment of an ordinary man as to render his mind for the time being deaf to the voice of reason, make him incapable of forming and executing that distinct intent to take human life essential to murder in the first degree, and to cause him, uncontrollably, to act from the impelling force of the disturbing cause rather than from any real wickedness of heart or cruelty or recklessness of disposition. It is not inconsistent with intelligent action, with consciousness of what one is doing, and of the responsibility therefor.

"The provocation, in order to be sufficient in law, must be such as to produce naturally and instantly in the mind of a person ordinarily constituted, and which did produce in the mind of the defendant, the highest degree of exasperation, rage, anger, sudden resentment, or terror.

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant caused the death of . . . . , and that under the instruction I have given you, the defendant caused . . . .'s death under circumstances which would otherwise be murder in the first degree, or murder in the second degree, but you find that the defendant committed the act causing . . . .'s death while in the heat of passion produced by adequate provocation, or you have a reasonable doubt thereof, and you are satisfied beyond a reasonable doubt that the defendant committed all of the elements of the offense of manslaughter as previously defined to you, then you should find the defendant . . . . guilty of manslaughter.

"If, however, you are not so satisfied, then you must find the defendant (not guilty) (not guilty of manslaughter)."

Judge Foley read this instruction properly in this case except that he twice substituted the word "and" in place of the word "or." As delivered by the judge, the second paragraph quoted above, stated:

"Before the defendant may be found guilty of manslaughter while in the heat of passion, you must be satisfied by the evidence beyond a reasonable doubt that there were present all of the elements of either first degree or second degree murder as I have defined them to you, except that you find that the defendant killed Shirley Adams while in the heat of passion caused by a reasonable, adequate provocation *and* you have a reasonable doubt thereof." (Emphasis added.)

The judge made a similar misstatement in the fifth paragraph quoted above.

The petitioner argues that if the instruction had been correctly given, the jury would have been informed that it should return a verdict of manslaughter if it found reasonable, adequate provocation for the killing, *or* if it believed there was at least a reasonable doubt that such provocation existed. As the instruction was read, it required the jury to find adequate provocation *and* to have a reasonable doubt thereof. Read that way the instruction did not make any sense. Because of this confusion and because of the use of the term "find" in the instructions, the petitioner argues that the jury might well have become confused and believed that the burden of proof as to the existence of provocation was placed upon the defendant. This is alleged to be a violation of Lee's constitutional right of due process, for the burden should have been placed upon the State to disprove the existence of reasonably adequate provocation.

Lee relies upon the United States Supreme Court case of *Mullaney v. Wilbur,* 421 U.S. 684 (1975), for the rule that the prosecution must prove facts beyond a reasonable doubt if their existence would negate an essential element of the crime. Under this rule, Lee argues that the burden should have been explicitly placed on the prosecution because the existence of adequate provocation would negate the intent to kill necessary for first-degree murder. Therefore, when the issue of provocation is raised by a

defendant attempting to argue that his conduct amounted to heat of passion-manslaughter instead of first-degree murder, Lee contends that the State must disprove the existence of adequate provocation beyond a reasonable doubt in order to maintain a conviction for first-degree murder.

The *Mullaney Case* involved a Maine statute requiring a defendant charged with murder to prove by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce the crime to manslaughter. The court held that this violated the fundamental constitutional principle of *In re Winship*, 397 U.S. 358 (1970), that the State must prove beyond a reasonable doubt every fact necessary to constitute a crime.

In 1977, the Supreme Court elaborated on *Mullaney* in the case of *Patterson v. New York*, 432 U.S. 197 (1977). The court upheld a New York statute which placed the burden on a defendant to prove by a preponderance of the evidence that he acted under the influence of an extreme emotional disturbance, so that the crime would be reduced from second-degree murder to manslaughter. The distinction between this case and *Mullaney* was said to be that *Patterson* involved an affirmative defense which did not negate any of the facts a state must prove in order to convict. Although the application of the rules from *Mullaney* and *Patterson* may be quite difficult in some cases, the essential question in applying them is whether a proposed defense negates an essential fact or element of the crime. If so, then the burden must remain on the state, once the defense has been sufficiently raised by the defendant. On the other hand, if a defense is deemed to be an affirmative defense, then the burden may be placed on the party raising it.

The parties disagree in the present case on whether heat of passion-manslaughter negates the intent element

of first-degree murder, or whether it is an affirmative defense.

The confusion surrounding the relationship between first-degree murder and manslaughter in this state stems in part from an inconsistency between the manslaughter statute and the commonly used manslaughter jury instructions. As noted above, the statute requires that the defendant act without intent to kill and in the heat of passion. However, the jury instruction states that in order to return a verdict of manslaughter, the jury must first be satisfied that all the elements of first or second-degree murder are present. A crucial element of first-degree murder is the intent to kill. It seems paradoxical to ask the jury to find that the elements of first-degree murder are present when these elements include the intent to kill, and then to find manslaughter which is defined as a killing done without the intent to kill.

Not only is the jury instruction inconsistent with the statute, but the statute itself seems illogical if read in a literal way. The purpose of sec. 940.05(1), Stats., is clearly to punish homicides less severely if they result from the heat of passion. However, many such homicides do involve an actual intent to take the life of another. This very intent is typically the result of the heat of passion. It is, as the jury instructions note, a different kind of intent from the "distinct intent to take human life essential to murder in the first degree." This intent results from "the impelling force of the disturbing cause rather than from any real wickedness of heart or cruelty or recklessness of disposition." Wis JI—Criminal, Vol. 1, 1130.

We do not believe that the phrase "without intent to kill" should be read in a literal way. This phrase has several times been recognized as a legal fiction. In an article discussing the 1955 amendments to the Wisconsin Criminal Code, William A. Platz, a member of the advi-

sory committee which drafted the Code, wrote, "The fiction that 'heat of passion' negates an intent to kill was abandoned in the 1953 code (which treated manslaughter as murder mitigated by circumstance) but has been written back into the law." 1956 Wisconsin Law Review, 370. This concept was seized upon in the concurring opinicn in *State v. Hoyt*, 21 Wis. 2d 284, 299, 128 N.W.2d 645 (1964) :

"What is the meaning of 'intent to kill' within this section? Generally, an intention to kill means that a person has consciously chosen to destroy another, and has purposively directed his conduct to that end.

"However, as the assistant attorney general has noted in argument, a finding that a defendant was adequately provoked, irrespective of the test applied, is legally equivalent to a finding of no intention to kill within the meaning of sec. 940.05 (1), Stats. Therefore, even though in *fact* a defendant consciously chose to kill another, and purposively directed his conduct to that end, if the victim's conduct would have provoked the ordinarily constituted man to follow the same course of action, the defendant is guilty of manslaughter and not murder."

This court has recognized that different types of intent are involved in first-degree murder and in manslaughter. In *Johnson v. State*, 129 Wis. 146, 160, 108 N.W. 55 we stated:

"We are constrained to approve the idea that the heat of passion which will reduce what would otherwise be murder to manslaughter in the third degree, and which is specified inclusively or exclusively in the statutory definitions of other homicidal offenses, is such mental disturbance, caused by a reasonable, adequate provocation as would ordinarily so overcome and dominate or suspend the exercise of the judgment of an ordinary man as to render his mind for the time being deaf to the voice of reason: make him incapable of forming and executing that distinct intent to take human life essential to murder in the first degree, and to cause him, uncontrollably, to act from the impelling force of the disturbing cause, rather than from any real wickedness of heart or cruelty

or recklessness of disposition. Uncontrollable passion in such circumstances is supposed to 'sway the reason regardless of her admonitions,' but it is not presumed to be, nor does the heat of passion spoken of contemplate, such overpowering disturbance as to destroy volition, the reasoning faculty, even temporarily. It is said that a transport of passion which deprives one of the power of self-control is, in a modified or restricted sense, a dethronement of the reasoning faculty, a divestment of its sovereign power, but an entire dethronement in a deprivation of the intellect for the time being." *See also: State v. Stortecky,* 273 Wis. 362, 77 N.W.2d 721 (1956), and *State v. Williford,* 103 Wis. 2d 98, 307 N.W.2d 277 (1981).

The current pattern jury instructions have developed from this line of cases. While it is certainly true that the manslaughter statutes have not been interpreted in a consistent fashion in some of the older decisions of this court, the cases stemming from the *Johnson Case* in 1906 have formed the basis for the practice of trial courts in dealing with this area. This is reflected in the wording of the jury instructions and represents the proper interpretation of the manslaughter statute.

We thus hold that the heat of passion upon adequate provocation does negate the "distinct intent to take human life essential to murder in the first degree." The burden of disproving beyond a reasonable doubt the existance of adequate provocation is placed on the State. However, before this issue can be deemed to exist, the defendant must introduce sufficient evidence to raise the heat of passion issue. As we explained in *State v. Schulz,* 102 Wis. 2d 423, 430, 307 N.W.2d 151 (1981), "The principles of due process are not violated if a burden of production—as opposed to a burden of persuasion—is placed upon the accused to come forward with 'some' evidence in rebuttal of the state's case." Such evidence must be sufficient to raise a reasonable doubt as to the

existence of adequate provocation. To be legally adequate, the heat of passion resulting from this provocation must satisfy both an objective and a subjective test. In *State v. Williford, supra,* 103 Wis. 2d at 113, we wrote: "The heat of passion element of this offense must be the result of adequate provocation and the defendant's state of mind at the time of the commission of the homicide; thus, heat of passion has both an objective (provocation) and a subjective (state of mind) facet." In other words, the provocation must be such that would cause an ordinary, reasonable person to be overcome with emotion to the degree discussed in the *Johnson* line of cases. Furthermore, this provocation must have actually caused such a reaction in the particular defendant.

In the present case Lee failed to introduce sufficient evidence to raise the heat of passion issue. We agree with the findings of the trial court and the court of appeals that a reasonable man would not have been sufficiently provoked under these circumstances into killing Shirley Adams. Lee took the gun with him from his house several hours before encountering Ms. Adams. When he met her, they argued and she dared him to shoot her. We concur with the trial court's statement that "[t]his is not such evidence showing such reasonable, adequate provocation as would overcome or suspend the exercise of judgment of an ordinary man." Therefore, the trial court's misstatement in the jury instructions is of no consequence because the evidence was insufficient to warrant giving the manslaughter instruction to the jury. We also agree with the trial court's conclusion that it was highly unlikely that the jury ever considered the possibility of rendering a verdict of manslaughter.

The petitioner further argues in his brief that even if insufficient evidence of adequate provocation existed to entitle him to a manslaughter instruction, he was still entitled to an instruction on second-degree murder on

the theory of imperfect provocation. This argument stems from language in *Brook v. State*, 21 Wis. 2d 32, 43, 123 N.W.2d 535 (1963), where the court wrote, "[o]ne of the most common situations in which a killing properly falls within this statutory definition of second-degree murder is where the actor kills in the heat of passion without such provocation as will reduce the offense to manslaughter." Relying on this language, the petitioner argued in his brief that adequate provocation reduces the offense to manslaughter, while inadequate provocation will reduce the offense to second-degree murder. Although counsel for the petitioner conceded at oral argument that he did not believe this was a correct statement of the law, we take this opportunity to clarify this point. We reiterate the statements made in *State v. Anderson* 51 Wis. 2d 557, 562, 187 N.W.2d 335 (1971), to the effect that the essential difference between first and second-degree murder is the intent to kill. To hold otherwise would subvert the first-degree murder statute. If any slight provocation would reduce the homicide to second-degree murder, then it would be very difficult to convict anyone of first-degree murder.

Thus when the defendant introduces sufficient evidence to raise the heat of passion issue, the burden rests on the prosecution to disprove it beyond a reasonable doubt. In the present case, however, Lee failed to introduce sufficient evidence to raise this issue and the trial court correctly denied his sec. 974.06 motion.

*By the Court.*—The decision of the Court of Appeals is affirmed.

DAY, J. (*concurring*). I concur with the result. While I agree with the majority's conclusion that the evidence in this case was insufficient to warrant giving the manslaughter instruction to the jury, I disagree with the interpretation which the majority gives to the manslaugh-

ter statute, which changes the clear and plain meaning of that statute.

Criminal offenses in Wisconsin are governed solely by statute; there are no common law crimes.[1] In *State v. Genova*, 77 Wis. 2d ₁41, 145, 252 N.W.2d 380 (1977), this court stated:

"Common law crimes were abolished in Wisconsin in the 1955 Criminal Code. Sec. 939.10, Stats. We must look to the Wisconsin legislature's definition of a crime, not the common-law definition."

Section 940.05(1), Stats. 1979–80, defines manslaughter as follows:

"940.05 **Manslaughter.** Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony:

"(1) *Without intent to kill* and while in the heat of *passion*. . . . (Emphasis added.)

"Without intent" are the key words. This state does not recognize provocation as an excuse or justification for the intentional killing of another human being. The majority opinion points to the inconsistency between the statute and the "standard jury instruction" and then decides to follow the jury instruction. Jury instructions are drafted by a panel of judges. Statutes are enacted by the legislature. I believe it's elemental law that when there is an inconsistency between a statute and a jury instruction it is the statute that controls.

The manslaughter instruction given in this case has worked to the benefit of defendants because of its inclusion of first-degree murder in its definition.

"Before the defendant may be found guilty of manslaughter while in the heat of passion, you must be sat-

[1] "939.10 **Common-law crimes abolished; common-law rules preserved.** Common-law crimes are abolished. The common-law rules of criminal law not in conflict with chs. 939 to 948 are preserved."

isfied by the evidence beyond a reasonable doubt that there were present all of the elements of either first degree murder or of second degree murder as I have defined them to you, except that you find that the defendant killed . . . . while in the heat of passion caused by a reasonable, adequate provocation, or you have a reasonable doubt thereof."

The instruction ought to be changed to eliminate any reference to first-degree murder. It properly contains the elements of second-degree murder.

The difference is that whereas in second degree murder the conduct that is "imminently dangerous" springs from within the individual, in manslaughter-heat-of-passion that same conduct is caused by outside influences that cause the individual to conduct himself in the proscribed manner resulting in the death of another *without the intent to kill*. If such provocation results in intent to kill, then it becomes murder in the first degree.

The legislature has recognized this distinction. First-degree murder carries a penalty of life imprisonment. Second-degree murder is punishable by a maximum of twenty years imprisonment, while manslaughter-heat-of-passion carries a maximum penalty of ten-years imprisonment.

The majority relies in part for its conclusions on the concurring opinion by the late Chief Justice Horace W. Wilkie in *State v. Hoyt*, 21 Wis. 2d 284, 304, 128 N.W.2d 645 (1964), in which he said that "intent" should be recognized as an element of manslaughter. However, he also said in that concurrence: "I would adopt the Model Penal Code formulation as the test of provocation under sec. 940.05 (1), Stats." He then sets forth that formulation as follows:

"Under the Model Penal Code, a homicide which would be ordinarily first or second-degree murder will be deemed manslaughter if 'committed under the influence of extreme mental or emotional disturbance for which

there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be.' "

That was not and is not the conclusion adopted by the majority in the *Hoyt* case or in the case at bar.

Unlike other states, Wisconsin does not recognize an intentional killing as manslaughter. Intentional killing is first-degree murder.

The majority opinion does not cite a single Wisconsin case that says that "intent" is an element of "manslaughter-heat of passion." The closest it comes is the reference to first-degree murder in the manslaughter instruction cited above.

An erroneous instruction should not be placed above the clear meaning of the statute. If Wisconsin wishes to change its law in this respect it should be done by the legislature and not by this court following a faulty jury instruction instead of the plain meaning of the statute. "Without intent to kill" means just that.

I am authorized to state that Justice WILLIAM G. CALLOW joins in this concurring opinion.