Rodney McKINNEY,
Petitioner-Appellant,

v.

Thomas ISRAEL, Respondent-Appellee.

No. 83–2409.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1984.
Decided July 16, 1984.

**492**

Steven P. Weiss, Asst. State Public Defender, Madison, Wis., for petitioner-appellant.

Andrew L. Somers, Jr., Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondent-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and HENLEY, Senior Circuit Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Appellant Rodney McKinney was convicted by a Wisconsin state court jury of first degree murder and sentenced to life imprisonment for the brutal slaying of his girlfriend. After an unsuccessful attempt to show ineffective assistance of counsel in the state courts,[1] McKinney petitioned the federal district court for the Eastern District of Wisconsin for a writ of habeas corpus. The district court denied the petition on the grounds that McKinney failed to prove ineffective performance of trial counsel. We affirm denial of the writ, but on the grounds of lack of prejudice from any possible ineffective assistance.

■ Under the Supreme Court's recent decision, *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective assistance of counsel must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. The Court noted that there is no reason to evaluate counsel's performance before turning to the prejudice question, and thus cases often could be disposed of on the ground of lack of sufficient prejudice. *Id.* at 2070. We are able to dispose of this case on such grounds, and we affirm denial of the petition.[2]

---

* The Honorable J. Smith Henley, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. The trial judge denied a post-conviction motion based on alleged incompetence of trial counsel. The judge found counsel was not incompetent and that "a first-degree murder verdict was inevitable." The ineffective assistance claim was raised on appeal to the Wisconsin Court of Appeals, which affirmed the conviction in an unpublished opinion. The Court of Appeals rejected appellant's argument that ineffec-

tive assistance of counsel never can be harmless error, and concluded that any error in McKinney's case was harmless beyond a reasonable doubt. The Wisconsin Supreme Court denied discretionary review.

2. We make no judgment about the quality of defense counsel's performance in this case. We are hopeful, however, that defense attorneys will not view the *Strickland* prejudice test as an excuse to exert less than a full effort on behalf of criminal defendants facing apparently inevitable conviction. While ineffective assistance

## I.

The turbulent relationship between Rodney McKinney and Margaret Utnehmer ended tragically when McKinney bludgeoned and stabbed Utnehmer to death in the kitchen of his apartment on March 15, 1979. Utnehmer, then seventeen years old, had told McKinney that morning about her infidelity and possible pregnancy by another man. After the attack on Utnehmer, McKinney took two checks payable to Utnehmer and her savings account passbook, cashed the checks at a local bank, and drove west. From Minneapolis, he called the local Wisconsin county sheriff's department and confessed over the telephone. On the advice of a deputy sheriff there, he turned himself in to Minneapolis police.

Upon his return to Wisconsin, appellant, then twenty-three years old, was found competent to stand trial. Appellant entered pleas of not guilty and not guilty by reason of mental disease or defect. The court appointed three psychiatrists to examine McKinney and report their opinions on his mental responsibility for the killing. All three doctors concluded that appellant was not suffering from a mental disease or defect such as to make him not responsible for his actions, but all noted that he lacked self-control and was under great emotional pressure from that day's events.

The state courts of Wisconsin follow a bifurcated trial procedure when a plea of not guilty by reason of insanity is to be tried by a jury. Wis.Stat. § 971.175 (1981–82); *see Muench v. Israel,* 715 F.2d 1124, 1131–33 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984) (historical discussion). In the first phase of the trial the jury determines the defendant's guilt, while in the second phase the jury determines whether the defendant was mentally responsible for the crime. As required by statute, the jury in this case was told that there would be a second phase of the trial in which it would consider the insanity plea. In the first phase of the trial, the jury was instructed on first and

second degree murder; the trial judge refused defense counsel's requested instruction on manslaughter in the heat of passion. The jury convicted McKinney of first degree murder. Shortly after the second phase of the trial began, defense counsel withdrew the plea of not guilty by reason of mental disease or defect. The trial judge entered the first degree murder conviction and sentenced McKinney to life imprisonment.

## II.

We turn directly to the prejudice analysis. The petition for writ of habeas corpus may be granted only if McKinney can show a reasonable probability that without defense counsel's alleged errors the result of his trial would have been different. *See Strickland,* 104 S.Ct. at 2068. We review the facts to determine whether evidence was available to cast a reasonable doubt that McKinney was guilty of first degree murder.

### A. Second Degree Murder

■ Under Wisconsin law, first degree murder requires the prosecution to prove beyond a reasonable doubt the defendant's intent to kill, defined as "the mental purpose to take the life of another human being." Wis.Stat. § 940.01(2) (1981–82). Second degree murder is defined to cover either dangerous conduct evincing a depraved mind disregarding human life, or a death flowing from the commission or attempted commission of a felony. Wis.Stat. § 940.02 (1981–82). The critical difference between first and second degree murder is that intent to kill is an element of first degree murder but not of second degree murder. *Terrell v. State,* 92 Wis.2d 470, 473, 285 N.W.2d 601, 603 (1979); *McAllister v. State,* 74 Wis.2d 246, 253, 246 N.W.2d 511, 515 (1976). A provocation that fails to support manslaughter may not be used to support a reduction from first to second degree murder. *See State v. Lee,* 108 Wis.2d 1, 13, 321 N.W.2d 108, 113–14 (1982).

that was not prejudicial to the defense may not be a sixth amendment violation, every criminal

defendant deserves the best representation his or her defense counsel is able to provide.

Appellant claims ineffective assistance due to trial counsel's unfamiliarity with the then-current Wisconsin law on admissibility of psychiatric testimony on the issue of intent to kill.[3] A review of the psychiatrists' reports and the facts of the case, however, reveals no reasonable probability that a different approach could have raised doubt that McKinney had an intent to kill. Dr. Fosdal, appointed to represent the court, did not comment on the issue of intent to kill in his initial report, but recorded no observations that suggested a lack of intent to kill. At the post-conviction hearing, Dr. Fosdal testified that he could not say whether or not the murder was intentional. Dr. Mulvaney, appointed to represent appellant, reported that he found "no evidence of a psychiatric disorder to motivate or interfere with [McKinney's] *intent* to carry out his actions. In my opinion, his actions were intended to bring about punishment or physical harm to another individual. Whether his intention was to kill is known only to Rodney." (Revised Conclusion; emphasis in original). Dr. Roberts, appointed to represent the state, did not address intent to kill in his original report. At the request of McKinney's appellate counsel, Dr. Roberts expanded his findings:

> It is my opinion that as of the time of that behavior there was a mental impairment present and significant question must be raised regarding the purpose in his mind of his behavior. I am not able

to state whether or not [McKinney's] behavior with its probable outcome was an intended behavior.... He did behaviorally respond to intense emotions and as of that time had a diminished capacity to intend the specific behaviors with which he was later charged.

Drs. Mulvaney and Roberts seemed to question only whether McKinney had the intent not just to physically harm Utnehmer but actually to kill her. Intent to kill, however, may be shown from the facts and circumstances of the case. *See State v. LaTender*, 86 Wis.2d 410, 426, 273 N.W.2d 260, 267 (1979); *Hayzes v. State*, 64 Wis.2d 189, 194, 218 N.W.2d 717, 720 (1974). McKinney described to police in detail how he lured Utnehmer into coming to his apartment that day; how he began choking her with his hands on the kitchen floor; how he noticed that she was struggling to speak, and when he released his grip she promised to marry him and begged him not to kill her; how he reached for a wooden cutting board that he used to bludgeon her throat; and how upon realizing that she was still alive, he stood up and found a knife that he used to stab her in the throat. Although McKinney later said he could not remember getting the knife and stabbing her, he did remember washing the knife after the attack, taking her checks and bank passbook, and fleeing the scene. We hold that regardless of the performance of counsel,[4] there is no reasonable probability

---

3. In response to *Hughes v. Mathews*, 576 F.2d 1250 (7th Cir.), *cert. dismissed sub nom. Israel v. Hughes*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978), psychiatric evidence was admissible on the issue of a defendant's intent to kill at the time of appellant's trial. *See Schimmel v. State*, 84 Wis.2d 287, 267 N.W.2d 271 (1978). Since then, the Wisconsin Supreme Court has overruled *Schimmel* and returned to its prior position of excluding psychiatric testimony from the guilt phase of trial. *See Steele v. State*, 97 Wis.2d 72, 294 N.W.2d 2 (1980). This court has approved that decision. *See Muench v. Israel*, 715 F.2d 1124 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984). Appellant's primary argument in support of his ineffective assistance claim is based on defense counsel's failure to introduce psychiatric evidence regarding appellant's intent to kill. However, as the Wisconsin Court of Appeals noted in affirming appellant's conviction, the exclusion-

ary rule of *Steele* is now a rule of evidence in Wisconsin and even if McKinney's conviction were reversed and his case remanded for retrial, *Steele* would require exclusion of the psychiatric evidence from the guilt phase of a new trial.

4. Appellant also urges ineffective assistance in defense counsel's argument in support of admitting a gruesome photograph of the victim's body. At the post-conviction hearing, defense counsel claimed that admission was a trial tactic. Admission of gruesome photographs is within the trial court's discretion in Wisconsin and will not merit reversal unless wholly unreasonable and for no purpose other than to inflame the jury. *Hayzes v. State*, 64 Wis.2d 189, 200, 218 N.W.2d 717, 723 (1974). Under the facts of this case, there is no reasonable probability that admission of the photograph prejudiced McKinney's case.

that McKinney's trial would have resulted in a conviction of second rather than first degree murder for lack of an intent to kill.

### B. Manslaughter

■ Manslaughter in the heat of passion by definition is committed without an intent to kill. Wis.Stat. § 940.05(1) (1981–82). The defendant bears the burden of production to raise the issue of heat of passion by showing some evidence of provocation that could negate an intent to kill. The burden then shifts to the prosecution to prove beyond a reasonable doubt that no adequate provocation existed. *State v. Lee*, 108 Wis.2d 1, 11, 321 N.W.2d 108, 113 (1982). Adequate provocation in Wisconsin is such provocation as would suspend the exercise of judgment by an ordinary, reasonable individual in similar circumstances. *See id.* at 12, 321 N.W.2d at 112–13; *State v. Klimas*, 94 Wis.2d 288, 302–03, 288 N.W.2d 157, 165 (App.1979), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 576, 66 L.Ed.2d 475 (1980). This standard is both objective and subjective, considering first whether the ordinary person would be provoked enough to suspend an intent to kill, and, if so, whether this particular individual was so provoked at the time. *Lee*, 108 Wis.2d at 12, 321 N.W.2d at 113.

■ All three psychiatrists confirmed the passionate circumstances facing appellant on the day he killed Utnehmer, and appellant's subjective impairment of judgment and control. The circumstances under which McKinney acted, however, as a matter of law were not such as would provoke an ordinary, reasonable person to act as McKinney did without an intent to kill. *Cf. State v. Felton*, 110 Wis.2d 485, 329 N.W.2d 161 (1983) (victim's escalating physical and sexual abuse of his wife, the defendant, and their children was sufficient evidence of objective provocation to warrant jury instruction on heat of passion manslaughter). The trial judge aptly described the law as it applies here when he denied appellant's request for a manslaughter instruction at trial:

> [I]t isn't the question of whether or not the defendant himself was in the heat of passion, but whether all of the circumstances surrounding the events that took place … were such that would arouse in an individual, an ordinary, reasonable individual, and not the defendant, the heat of passion.… Now, I listened very carefully to the testimony that has been presented here … and I'm satisfied that as a matter of law and not as a matter of evidence that what took place there was not such as could raise in the mind of any reasonable individual the highest degree of exasperation, rage, anger, sudden resentment or terror.

Appellate counsel has pointed to no evidence that would have supported a manslaughter instruction. Testimony on appellant's subjective anger and passion would not have been relevant due to the lack of evidence of objectively adequate provocation. *See Klimas*, 94 Wis.2d at 306; 288 N.W.2d at 166. There is no reasonable probability that prejudice to appellant's case due to counsel's performance resulted in appellant's conviction for murder rather than manslaughter.

### C. Mental Disease or Defect

■ In the second phase of the bifurcated trial, defense counsel could have presented psychiatric evidence of a mental disease or defect to show that at the time of the slaying appellant lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Wis. Stat. § 971.15 (1981–82). Appellant does not argue that he could have been found not guilty by reason of mental disease or defect. All three psychiatrists reported that McKinney was not suffering from a mental disease or defect when he killed Utnehmer, and we are aware of no evidence that would show otherwise. Appellant suffered no prejudice from defense counsel's decision to withdraw the insanity plea. Further, appellant was not prejudiced by defense counsel's failure to withdraw the plea before the first phase of the

trial was completed.[5] While appellant argues that the jury may have convicted him of a more serious crime with the expectation that it could soften the blow of its verdict when addressing the insanity issue in the second phase of the trial, we must presume that the jury would "reasonably, conscientiously, and impartially" follow the instructions and render its verdict according to the law. *See Strickland,* 104 S.Ct. at 2068–69.

### III.

Even if defense counsel's performance was inadequate at McKinney's trial, we see no reasonable probability that the result could have been other than a first degree murder conviction, and hence we hold that appellant suffered no cognizable prejudice. We affirm the denial of the petition for writ of habeas corpus.

---

**5.** Wisconsin courts also exclude psychiatric testimony regarding intent to kill in a single phase trial where no insanity plea is entered. *See Muench v. Israel,* 715 F.2d 1124 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984); *Steele v. State,* 97 Wis.2d 72, 294 N.W.2d 2 (1980); *State v. Dalton,* 98 Wis.2d 725, 298 N.W.2d 398 (1980).