WEATHERALL, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–17–CR. Submitted on briefs May 5, 1976.—*
*Decided June 2, 1976.*
(Also reported in 242 N. W. 2d 220.)

---

[30] (1967), 37 Wis. 2d 302, 155 N. W. 2d 111, 156 N. W. 2d 492.

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg*, state public defender, and *Robert J. Paul*, assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *David J. Becker*, assistant attorney general.

ROBERT W. HANSEN, J. Here there are two writs of error, challenging the competency of trial counsel and the sentences imposed. Each issue will be considered separately.

*Challenge to Competency of Trial Counsel.*

The state public defender's office has been substituted for retained trial counsel as to the seeking of postconviction relief for this defendant. Successor counsel attacks the conduct of the defense by trial counsel. Here, as is often enough the case,[1] this tempts postconviction counsel to stress what he would have done differently had he

---

[1] *Ameen v. State* (1971), 51 Wis. 2d 175, 185, 186 N. W. 2d 206, this court observing: "Par for the course these days is an attack upon the competence of trial counsel on appeal of criminal court convictions. Even the ablest of attorneys in the criminal law field are accustomed to having their judgment as to trial tactics challenged by postconviction counsel."

conducted the defense at time of trial.[2] Our court has called this hindsight-is-better-than-foresight approach to be "Monday-morning quarterbacking"[3] and has made clear that ". . . it is the right of a defendant and trial counsel to select the particular defense, from among the alternatives available, upon which they elect to rely."[4] In deciding upon trial tactics, " '. . . [I]t is the considered judgment of trial counsel that makes the selection among available defenses, not the retroactive conclusion of postconviction counsel.' "[5] Application of this rule as to trial tactics makes it unnecessary to do more than to discard almost all of the situations in which postconviction counsel indicates that he would have, in pursuit of a different game plan, done some things that trial counsel here did not do and not done some things that trial counsel did do.

The challenge to competency of trial counsel that goes beyond a matter of trial tactics is the contention of postconviction counsel that the retained trial attorney rejected an available defense in favor of a defense that was not a defense at all. The standard for determining effective or adequate representation is that it ". . . must be equal to that which the ordinarily prudent lawyer,

---

[2] Id. at pages 185, 186, this court stating: "The implication seems to be that something must have been wrong with trial strategies that were followed by a conviction. The implied suggestion is that a different game plan would have led to a different result. Not necessarily so. If the Monday morning quarterback's substitute strategy were to have been followed in Saturday's football game, the result might well have been the same—but the margin of defeat far greater."

[3] Lee v. State (1974), 65 Wis. 2d 648, 657, 223 N. W. 2d 455, this court stating: "To permit postconviction counsel to argue for a different game plan, after the contest is over, would be Monday-morning quarterbacking. . . ."

[4] Id. at page 657, citing Kain v. State (1970), 48 Wis. 2d 212, 222, 179 N. W. 2d 777.

[5] Id. at page 657 (footnote 17), quoting Kain v. State, supra, footnote 4, at page 222.

skilled and versed in criminal law, would give to clients who had privately retained his services."[6] Trial counsel here has had many years of experience in the criminal law field and was privately retained by this defendant. Not denying the experience and background of trial counsel, postconviction counsel argues that trial counsel was required to raise the defense of entrapment instead of the "Good Samaritan" approach that he used in arguing the case to the jury.

The facts of the case as presented at trial are as follows:

For the prosecution, an undercover agent testified to three purchases of heroin from the defendant, each at a different time. As to the first sale, his testimony was that he was introduced to the defendant and asked the defendant if he would sell him some heroin. Defendant replied that he could and that it would cost $50. The agent agreed to the price and defendant went to get the heroin and returned to make the sale. As to the second sale, the agent testified that they met by accident in a tavern, and the agent asked defendant if he had a "10 cent bag of boy" (a ten dollar bag of heroin). Defendant responded affirmatively. Sometime later defendant gave the agent the heroin and received the $10. As to the third sale, the agent testified that while they were in a store the defendant asked the agent if he wanted to "cop some sharp boy" (buy some good heroin). The agent said he did. Defendant met the agent later in the tavern and the exchange of $10 for the heroin took place.

For the defense, the principal witness was the defendant. As to the first sale, he testified that he did not sell any heroin to the agent. Instead, he testified, he got some heroin for his girl friend, Jeanine, "because she was a junkie." As to the second sale, the defendant ad-

---

[6] *State v. Harper* (1973), 57 Wis. 2d 543, 557, 205 N. W. 2d 1, this court also stating: "Effective representation is not to be equated, as some accused believe, with a not-guilty verdict."

mitted the sale to the agent but stated he sold the heroin only because the agent told him that he (the agent) had not been able to get any heroin and was becoming sick. As to the third sale, the defendant admitted the fact of sale to the agent and gave the same reason for making it. As to the last two sales, his testimony was: "On the last two occasions I obtained it as a result—help him to prevent him from becoming sick and ill. . . ."

Postconviction counsel views the record of such testimony as having "presented in its most classic form a setting for an entrapment defense."[7] To establish the defense of entrapment, the ". . . burden of the accused is to show by a preponderance of the evidence that the inducement occurred."[8] Additionally, to defeat such defense, "[t]he burden of the state would be to show beyond a reasonable doubt that the accused had a prior disposition to commit the crime."[9] We are not required to predict the outcome of the case if it had been tried as the postconviction counsel now states he would then have tried it. The sole question before us is whether there was a basis in reason or any rational basis for the trial counsel recommending to his client that the defense of entrapment not be attempted. In explaining his not relying on entrapment, trial counsel gave as the basis for his

---

[7] Plaintiff in Error Brief, page 20.

[8] *Hawthorne v. State* (1969), 43 Wis. 2d 82, 91, 168 N. W. 2d 85. *See also: State v. Amundson* (1975), 69 Wis. 2d 554, 565, 230 N. W. 2d 775, this court holding: "This court has recognized, contrary to the defendant's contention, that entrapment encompasses inducements and other activities by the police which remove the element of volition from the conduct of the defendant." (Citing *State v. Hochman* (1957), 2 Wis. 2d 410, 415, 86 N. W. 2d 446.)

[9] *Id.* at page 91. *See also: State v. Boutch* (1973), 60 Wis. 2d 443, 448, 210 N. W. 2d 730, this court holding: "The question to be determined is whether the defendant was so predisposed to commit the crime of sale of dangerous drugs that it can be held that the criminal design originated with him."

exercise of legal judgment the fact that there were three deliveries. That is certainly a material factor, but here, on the defendant's own testimony, there is no foundation for claiming entrapment with any chance of success. With the defendant denying the first sale, he could hardly claim that he was entrapped into making the sale he claimed he did not make. As to the second two sales, defendant's statement that he made the sales of heroin to help the agent ("help him to prevent him from becoming sick and ill") falls far short of the degree of inducement required to be proved to establish entrapment.[10] There is no evidence of the agent having to overcome refusals and reluctance to make the purchase.[11] Moreover, the defendant's testimony, plus the fact of more than a single sale, establishes a prior disposition to commit the crime. Trial defense counsel is not ". . . required to pursue any and all roads, however uninviting, that might lead to creating doubt in the minds of the jury."[12] There was a rational basis for trial counsel not to use the defense of entrapment. As our court has said, trial counsel is "not required to assert an untenable defense because postcon-

[10] See: *Granville v. State* (1972 Del), 287 Atl. 2d 652, 655, the court there holding: "The police officer did not have to persuade or plead with him [the defendant] and, in fact, said little more to the appellant than to ask him if he knew where to get some heroin, that he was 'sick' and needed it. . . . An officer who merely affords an opportunity to one who intends to violate the law does not thereby entrap the other."

[11] See: *United States v. Sawyer* (3d Cir. 1954), 210 Fed. 2d 169, 170, the case dealing with a situation where the defendant was asked twice to make an illegal sale and refused; the third time the federal agent "feigned a dramatic and violent seizure and begged Sawyer to get him something to relieve his distress." *See also: United States v. Haynes* (2d Cir. 1968), 398 Fed. 2d 980, certiorari denied (1969), 393 U. S. 1120, 89 Sup. Ct. 996, 22 L. Ed. 2d 124; *Sherman v. United States* (1958), 356 U. S. 369, 78 Sup. Ct. 819, 2 L. Ed. 2d 848.

[12] *Kain v. State, supra,* footnote 4, at page 221.

viction counsel, predictably almost, will later claim that such defense should have been asserted."[13]

Rejecting entrapment as an appropriate theory of the case for the defense, trial counsel instead opted to conduct the trial and made his plea to the jury under a "Good Samaritan" approach. Given the denial of one sale and the admission by his client of the other two sales, counsel sought to increase the possibility of the jury accepting his client's denial as to the first sale by portraying his client as one who had sought only to help someone in trouble and distress. Establishing such intent to help, rather than to profit, would not be a legal defense under the statute defining the crime charged.[14] However, such attempt to put his client in the most favorable light possible, if successful, might incline the jurors to accept, on the issue of credibility, the testimony of the defendant rather than that of the undercover agent as to the first sale, the only one denied by defendant. Our court has taken judicial notice of the fact that juries do, on occasion, temper justice with leniency.[15] As an experienced criminal lawyer, trial counsel was entitled to give weight to such extra-legal possibility. He is no more to be faulted for such exercise of professional judgment than is the defense counsel who, facing formidable adverse facts, advises his client to plead guilty, perhaps on a lesser charge, rather than to go to trial on a plea of not guilty. Later on, postconviction counsel may not agree with the advice given and followed, but that is always, later on.

---

[13] *Id.* at page 221.

[14] *See:* Sec. 161.41 (1) (a), Stats. *See also:* Sec. 141.01 (6), Stats.

[15] *State v. Mills* (1974), 62 Wis. 2d 186, 192, 214 N. W. 2d 456, this court stating: "Also, it is conceded that juries have historically exercised a sense of lenity in criminal matters . . . and have granted numerous defendants clemency for crimes which they have committed and which the evidence is sufficient to sustain." *See also: Bailey v. State* (1974), 65 Wis. 2d 331, 356, 222 N. W. 2d 871.

■ ■ Postconviction counsel lists other complaints as to the trial counsel's conducting of the defense for this defendant. Some seem almost frivolous or conjectural in nature. Most relate to trial tactics during the course of the trial. All have been reviewed and considered, and any and all together are rejected as warranting a finding of inadequate representation of this defendant by his trial counsel. Many of the particularized complaints relate to the argument of postconviction counsel that entrapment should have been the theory of the defense. For example, the claim of insufficient time given to preparation and failure to examine certain police reports is clearly related to the nature of the defense theory—conceding the two sales to have been made by arguing they were acts of a "Good Samaritan," wanting only to help one who claimed to be sick or about to become sick. As trial counsel stated: "In handling a case, I formulate a defense. The defense I had formulated for Mr. Weatherall did not necessitate looking at a police report." There is a duty on the part of trial lawyers in criminal cases to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty.[16] This includes efforts to secure exculpatory information in the possession of the prosecution and law enforcement authorities.[17] However this duty, even where breached, does not, in the absence of a claim that exculpatory evidence was thereby overlooked or not discovered, constitute a basis for holding that a defendant was denied adequate representation at the time of trial. As to this, as well as to the claim that more time should have been allotted to preparing for trial, it is the conduct of the trial, not the preparation, that is to be analyzed and re-

[16] *See:* American Bar Association Project on Standards for Criminal Justice, *Standards Relating to The Defense Function,* sec. 4.1.

[17] *Id.*

viewed when a claim of incompetency of trial counsel is made. Prejudice to the defendant must be alleged and established deriving from either a failure to inspect a document or to allot a certain number of hours or days to preparation. Here such prejudice is not in any way alleged or shown.

██ The same requirement of prejudice shown exists as to postconviction counsel's claim that trial counsel was required to raise an issue as to denial of a speedy trial. The reference is to a prearrest delay, not to delay between arrest and trial. Seven or eight months elapsed between the sales and the arrest. We see no likelihood of this argument succeeding on this record, but we dispose of this issue raised by noting that, to prevail on such motion, the defendant must show prejudice.[18] No prejudice is here alleged or established.

*Challenge to Three Consecutive Sentences.*

Defendant was sentenced to three consecutive terms of ten years each. Following motions for postconviction relief, these sentences were reduced to three consecutive terms of eight years each. Defendant contends that these sentences represent an abuse of trial court discretion for four reasons. Each reason will be taken up separately.

---

[18] *State v. Rogers* (1975), 70 Wis. 2d 160, 166, 167, 233 N. W. 2d 480, this court, dealing with a claim of unreasonable delay between the date of the alleged offense and the commencement of criminal proceedings, held: ". . . [N]ot 'every delay-caused detriment to a defendant's case should abort a criminal prosecution.' [quoting *United States v. Marion* (1971), 404 U. S. 307, 324, 325, 92 Sup. Ct. 455, 30 L. Ed. 2d 468]

"No actual prejudice to the conduct of the defense has been alleged or proved. Any claim of actual prejudice is unsubstantiated.

". . . The defendant alleges inconvenience, indignity, anxiety and financial loss resulting from the delay and the undue publicity surrounding it. Assuming these facts to be true, they do not rise to the level of intentional government action to gain tactical advantage or to harass."

(1) *Presentence Report.* No presentence report was requested by the defendant or ordered by the court. Defendant claims a presentence report is required before sentencing even when not requested by the defendant. Even if it is so requested, it is not so required. The statute applicable provides only that: "After conviction the court *may* order a presentence investigation."[19] (Emphasis supplied.) Our court has held that, while the use of a presentence investigation is to be encouraged, it is not required.[20]

(2) *"Single Episode."* Defendant complains of the imposition of consecutive sentences, referring to the three sales of heroin involved as a "single criminal episode."[21] That is not an accurate description of three separate sales of heroin, each made on different days and with two places of sale involved. We see no reason or basis for treating the three convictions here as related to a "single criminal episode."[22]

(3) *Individualized Consideration.* Defendant's contention here is that a trial court ought not be entitled to impose consecutive sentences, except in compliance with the ABA Standards Relating to Sentencing Alternatives and Procedures.[23] The short answer is that this court

[19] Sec. 972.15 (1), Stats.

[20] *State v. Schilz* (1971), 50 Wis. 2d 395, 403, 184 N. W. 2d 134, this court adding, ". . . it is not a substitute for the demonstrated exercise of independent judicial discretion." *See also: Sprang v. State* (1974), 63 Wis. 2d 679, 687, 218 N. W. 2d 304, where this court approved a sentence imposed consecutive to one being served where there was no presentence investigation ordered.

[21] Plaintiff in Error Brief, page 30.

[22] *See: Hughes v. State* (1975), 68 Wis. 2d 159, 169, 227 N. W. 2d 911.

[23] ABA *Standards Relating to Sentencing Alternatives and Procedures,* sec. 3.4 (b) (iv).

has not adopted the rule suggested.[24] The longer answer is that such rule would require only a trial court finding that ". . . confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant."[25] Here the trial court stated on the record: ". . . Well, we got the peddler, and, of course, the jury didn't buy his story, and I, of course, saw through it immediately. He's a peddler. He's not a good samaritan, Mr. Murphy. This man is a cancer in our society. . . . Therefore, I shall proceed to sentence, because I believe this man is the worst type of criminal of all. Murderers many times kill because in the heat of passion, . . . but this, a man like Weatherall killed many people, and we're going to remove him from the scene for a long, long, long time." We would hold that the judge's stated reason for the sentences imposed constitutes an adequate finding that "confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant."

▌ (4) *Limit on Sentences.* Defendant argues for a twenty-five year overall limit on consecutive sentences. With the reduced sentences he secured, he was sentenced to three eight-year terms, or a maximum of twenty-four years. The limit he proposes would hardly aid him or reduce the time ordered to be served by him. Moreover, the legislature has made no such provision for a limit on sentences to be served consecutively. Any suggestion that there be such a limit ought to be addressed to the legislature, not this court. The trial court has discretion ". . . in determining the length of sentence within the permissible range set by statute."[26] There is a strong policy against interference with the discretion of the trial court

---

[24] *See, e.g., Hughes v. State, supra,* footnote 22, at pages 169, 170.

[25] *See:* footnote 23.

[26] *Ocanas v. State* (1975), 70 Wis. 2d 179, 185, 233 N. W. 2d 457.

in passing sentence,[27] and there is certainly neither disposition nor reason to quarrel with the sentences here imposed.

*By the Court.*—Judgments affirmed.

[27] *Id.* at page 183, the court holding: "This court has stated that it will review sentences to determine whether there has been an abuse of discretion. However, such questions will be treated in light of a strong policy against interference with the discretion of the trial court in passing sentence."