COURT OF APPEALS
DECISION
DATED AND FILED

October 14, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP55**

**STATE OF WISCONSIN**

Cir. Ct. No. 2012CF963

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

VICTOR H. BENITEZ,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: WILLIAM E. HANRAHAN, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Nashold, JJ.

   **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Victor H. Benitez appeals an order denying his WIS. STAT. § 974.06 (2019-20)[1] postconviction motion for a new trial and postconviction discovery, entered following an evidentiary hearing.   Benitez argues that postconviction counsel was ineffective for failing to raise claims alleging ineffective assistance by trial counsel, and that he is entitled to additional testing of airbag fiber evidence.  We conclude that trial counsel did not perform deficiently and therefore, postconviction counsel was not ineffective.  We further conclude that Benitez is not entitled to the postconviction discovery he seeks.  We affirm.

## BACKGROUND

¶2     Following a jury trial, Benitez, the sole survivor of a single-car crash, was convicted of numerous charges stemming from the deaths of the car's other four occupants, including homicide by driving while intoxicated and homicide by driving with a restricted controlled substance in his blood.[2]  Benitez's defense at trial was that the State failed to prove that Benitez was driving the car at the time of the crash.  On direct appeal, Benitez argued that trial counsel was ineffective for failing to object to a jury view of the car, to an expert report, or to testimony of Trooper Ryan Zukowski (the accident reconstructionist called as a witness by the State at trial), and that his sentence was unduly harsh.  We affirmed the judgment. *State v. Benitez*, No. 2015AP1602-CR, unpublished slip op. (WI App July 14, 2016).

¶3     Thereafter, Benitez, by new counsel, filed the WIS. STAT. § 974.06 postconviction motion and motion for postconviction discovery that resulted in the

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Benitez was acquitted of four counts of hit and run causing death.

circuit court decisions that Benitz now appeals. Benitez claimed that trial counsel provided ineffective assistance in his (1) "handling" of the airbag fiber evidence at trial; (2) "handling" of certain "aspects" of the toxicology evidence; (3) failure to seek suppression of Benitez's statements, "or at least place them in proper context"; and (4) failure to challenge the legality of Benitez's arrest. The motion alleged that Benitez's sufficient reason for failing to raise these claims on direct review was the ineffectiveness of postconviction counsel. Additionally, Benitez asked the postconviction court to order "post-conviction testing and analysis of the fibers found on the driver's airbag against the clothing of all the other vehicle occupants."

¶4    The circuit court held an evidentiary **Machner**[3] hearing. Trial and postconviction counsel both testified, along with two expert witnesses called by Benitez. The circuit court denied the motion, finding that Benitez had not shown that trial or postconviction counsel's strategic decisions were unreasonable or prejudicial. Benitez appeals.

## DISCUSSION

### I.    Legal Standards

¶5    Absent a sufficient reason, a defendant is procedurally barred from using a WIS. STAT. § 974.06 postconviction motion to bring claims that could have been raised earlier. *See **State v. Escalona-Naranjo***, 185 Wis. 2d 168, 184-85, 517 N.W.2d 157 (1994); § 974.06(4). The ineffective assistance of postconviction counsel may constitute a reason sufficient to overcome the procedural bar. *See **State ex rel. Rothering v. McCaughtry***, 205 Wis. 2d 675, 682-83, 556 N.W.2d 136 (Ct.

---

[3]  ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

App. 1996). In determining whether postconviction counsel was ineffective, we first examine trial counsel's performance. *See* **State v. Ziebart**, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369.[4]

¶6    To prevail on an ineffective assistance of counsel claim, a defendant must establish that counsel performed deficiently and that this deficiency prejudiced the defendant. **Strickland v. Washington**, 466 U.S. 668, 687 (1984). To establish deficient performance, a defendant must show specific acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Id.* at 690. Judicial review of an attorney's performance is "highly deferential" and the reasonableness of an attorney's acts must be viewed from counsel's contemporary perspective to eliminate the distortion of hindsight. **State v. Maloney**, 2005 WI 74, ¶25, 281 Wis. 2d 595, 698 N.W.2d 583. To prove prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 694. We need not address both prongs of the test if the defendant fails to make a sufficient showing on either one. *Id.* at 697.

### II.    *Airbag Fiber Evidence*

¶7    At trial, Benitez called Ruth Henk, a State Crime Lab analyst in the trace evidence unit. Henk testified that she tested the front-seat driver and passenger airbags, fibers found on the airbags, and three items of Benitez's clothing. She

---

[4] Generally, a defendant who alleges that postconviction counsel was ineffective for failing to bring certain viable claims must demonstrate that the new claims he wishes to bring are clearly stronger than those actually brought by postconviction counsel. **State v. Romero-Georgana**, 2014 WI 83, ¶4, 360 Wis. 2d 522, 849 N.W.2d 668. Because we determine that trial counsel did not perform deficiently, it follows that postconviction counsel was not ineffective for failing to bring the new challenges raised in Benitez's WIS. STAT. § 974.06 collateral attack. Put differently, we have concluded that Benitez's new claims are not viable.

testified that fibers found on the driver's airbag were inconsistent with Benitez's clothing, while fibers found on the passenger's airbag were consistent with his black t-shirt. On cross-examination, she testified that in a rollover accident with unrestrained occupants, trace material might get tossed around, and agreed that as compared to a head-on collision, trace evidence in "[a] rollover would be less reliable [in helping to determine] driver placement" just before a crash.

¶8 In closing argument, trial counsel relied on this evidence that Benitez's DNA was not found on the airbags and that fibers consistent with his shirt were found on the passenger's airbag. He argued that the airbags were of "unique evidentiary value" because they had been "tucked away" until the accident occurred. In rebuttal, the State argued that it "makes perfect sense" that possible fibers from Benitez's shirt were found on the passenger's airbag given evidence that the driver was thrust to the side and because Benitez had "crawled out through the passenger side" to exit the car after the crash.

¶9 Benitez contends that trial counsel performed deficiently by failing to (1) seek further comparison testing of fibers from the driver's airbag to see if they matched any of the victims' clothing, (2) ask additional specific questions of Henk, and (3) somehow prevent the State from arguing that the fiber evidence was consistent with its theory of the crash. We are not persuaded.

¶10 At the *Machner* hearing, trial counsel testified that "the general theory of the case as I looked at it was the evidence that existed did not place [Benitez] in the driver's seat." Counsel testified that he considered this "a pretty solid defense," because accident reconstructionist Zukowski "could not determine who was driving the vehicle." Counsel confirmed that he called Henk to testify because there were "fibers consistent with [Benitez] on the passenger airbag." He did not object to

Henk's testimony concerning how the driver's clothing fibers might have ended up on the passenger airbag because he did not think this testimony was "very credible." Trial counsel testified that he considered hiring an expert to talk about airbag deployment but chose not to because "the airbag evidence wasn't that critical."

¶11 On this record, it was objectively reasonable for trial counsel not to seek further testing of trace fibers found on the driver's airbag. Benitez's theory was that the State could not prove beyond a reasonable doubt that he was the driver. Trial counsel argued in closing that given all the variables, the driver's identity was unknowable and could never be determined. Assuming that the other occupants' clothing was even preserved, Benitez fails to explain why trial counsel should have determined that there was something to be gained from further testing, given that the test results were already consistent with Benitez's defense. *See Strickland*, 466 U.S. at 691 (a reasonable decision that makes particular investigations unreasonable is not deficient performance).

¶12 Similarly, we reject Benitez's contention that trial counsel unreasonably mishandled Henk's testimony and the airbag fiber evidence introduced at trial. Here, Benitez faults trial counsel for not preventing Henk from testifying that trace material could get tossed around in a rollover crash, and for not objecting to the State's closing argument advancing a different interpretation of the fiber evidence. We agree with the State that these claims lack substance and rely on hyperbolic hindsight descriptions of the trial testimony that in no way establish trial counsel's ineffectiveness. "'[I]t is the right of a defendant and trial counsel to select the particular defense, from among the alternatives available, upon which they elect to rely[,]'" and "'[i]t is the considered judgment of trial counsel that makes the selection among available defenses, not the retroactive conclusion of postconviction counsel.'" *Weatherall v. State*, 73 Wis. 2d 22, 26, 242 N.W.2d 220 (1976) (quoted

6

source omitted). That postconviction counsel or other counsel might have tried the case differently does not establish that trial counsel performed deficiently.

¶13 Contrary to Benitez's suggestion, his expert mechanical engineer, Zachary Bingen, said nothing at the *Machner* hearing that bolsters the significance of the airbag fibers. Bingen conceded that his findings were "consistent with [Zukowski's] findings" about how the crash occurred and occupant movement during the crash. He conceded that "once the airbags are deployed, there are any number of ways in which fibers could be deposited on an airbag." Further, as noted by the postconviction court, Bingen conceded that he had no training in trace evidence analysis and was concluding how fibers could end up on the airbags based on common sense.

### III. Failure to Seek Suppression of Benitez's Statements or to Place them in Proper Context

¶14 After the accident, Benitez was transported to the hospital, where he remained for six days under police guard. Benitez repeatedly asked what had happened and frequently requested a "play-by-play" of the accident. While hospitalized, Benitez made statements relating to the accident but never admitted to driving the car. In closing, the State argued that Benitez was feigning his lack of memory and noted that he made inconsistent remarks about the accident. Trial counsel argued that Benitez was confused due to his injuries, including a concussion, along with the trauma of the accident. This explained his lack of memory, why he left the accident scene, and any inconsistent statements.

¶15 Benitez argues that trial counsel should have moved to suppress all of his statements made to police, family members, and medical personnel either

because he was not read his *Miranda*[5] rights, the statements were involuntary, or the statements were contained in his hospital records. He divides the statements into three categories: those made before 8:12 p.m., when Benitez was told he was under arrest; those made after 8:12 p.m. pursuant to direct questioning by police; and those made after 8:12 p.m. "by de facto police proxies and/or resulting from the functional equivalent of questioning." The State agrees that Benitez was in custody for *Miranda* purposes at 8:12 p.m., but argues several reasons why his claims lack merit.

¶16 Law enforcement is required "to inform suspects of their rights to remain silent and to have an attorney present during custodial interrogations." *State v. Bartelt*, 2018 WI 16, ¶27, 379 Wis. 2d 588, 906 N.W.2d 684 (citing *Miranda*, 384 U.S. at 458). A person is in custody for *Miranda* purposes when there is "'a formal arrest or restraint on freedom of movement of a degree associated with a formal arrest.'" *Bartelt*, 379 Wis. 2d 588, ¶31 (quoted source omitted). Whether questioning of a person in custody constitutes interrogation depends on "the nature of the information the question is trying to reach." *State v. Harris*, 2017 WI 31, ¶17, 374 Wis. 2d 271, 892 N.W.2d 663. "If that information has no potential to incriminate the suspect, the question requires no *Miranda* warnings." *Harris*, 374 Wis. 2d 271, ¶17. However, if the question is "'designed to elicit incriminatory admissions,'" the answer to that question must be suppressed. *Id.*, ¶¶15–16 (quoted source omitted).

¶17 We agree with the State that Benitez has not met his burden to show that trial counsel performed deficiently by failing to seek suppression of Benitez's statements. First, Benitez fails to develop his argument with the requisite

---

[5] *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

specificity, instead referring only generally to how the State summarized his statements in its closing argument. As the State's brief points out, Benitez spent days in the hospital and made different types of statements to different people at different times under a variety of circumstances. Benitez does not identify with particularity which of these statements trial counsel should have tried to suppress. *See State v. Prescott*, 2012 WI App 136, ¶11, 345 Wis. 2d 313, 825 N.W.2d 515 (allegation "'that counsel was ineffective by failing to take certain steps must show with specificity what the actions, if taken, would have revealed and how they would have altered the outcome of the proceeding'" (quoted source omitted)).

¶18     Second, to the extent Benitez identifies specific statements made to law enforcement that should have been suppressed, he fails to show why they would have been suppressed based on a motion by trial counsel. A reasonable person in Benitez's position would not have considered himself in custody before 8:12 p.m., when he was placed under arrest. *See Bartelt*, 379 Wis. 2d 588, ¶31 (reciting the objective test for determining whether a person is in custody for *Miranda* purposes). Benitez does not argue exactly when he was in custody, but asserts it was as early as 8:09 p.m., when Officer Hauda helped accompany Benitez from his CT Scan back to his hospital room, because he was "captive in a very vulnerable position," and Hauda had already decided to arrest him, which "inform[ed] her demeanor." We are not persuaded. Benitez was in the hospital for treatment due to his injuries, and he fails to explain what "inform[ed] her demeanor" means, or why it matters. "'[T]he initial determination of custody'" does not depend on "'the subjective views harbored by either the interrogating officers or the person being questioned.'" *Bartelt*, 379 Wis. 2d 588, ¶33 (quoted source omitted).

¶19     Benitez admits that the police did not question him, but rather he characterizes them as "repeatedly indulging [Benitez's] requests to know what had

happened." Statements Benitez volunteered to the officers and their responses to questions that he asked them, unprompted, do not implicate *Miranda*. *See LaTender v. State*, 77 Wis. 2d 383, 389-90, 253 N.W.2d 221 (1977). *Miranda* is implicated only by custodial interrogation, meaning "express questioning or its functional equivalent." *State v. Dobbs*, 2020 WI 64, ¶66, 392 Wis. 2d 505, 945 N.W.2d 609. Officers truthfully answering Benitez's unprompted questions about what they knew about the crash and the status of his passengers is not designed to elicit an incriminating response. Nor do Officer Gehrke's 3:00 a.m. questions concerning Benitez's mental status constitute interrogation for *Miranda* purposes. *See Dobbs*, 392 Wis. 2d 505, ¶66 ("'Express questioning' does not encompass every inquiry that is directed to a subject, it covers only those 'designed to elicit incriminatory admissions.'") (quoted source omitted).

¶20 Third, we agree with the State that *Miranda* does not require suppression of statements Benitez made to family or hospital staff while "in police presence." Benitez offers no authority for this novel proposition, nor does he factually support his contention that his family or hospital staff were acting as "de facto police proxies." Benitez tacitly recognizes as much by requesting that we extend the law and hold that the police staying in Benitez's hospital room where they could overhear conversations was the "functional equivalent of questioning." However, this tacit admission defeats his ineffectiveness claim because neither trial nor postconviction counsel can be found deficient for failing to make a novel argument. *See State v. Lemberger*, 2017 WI 39, ¶18, 374 Wis. 2d 617, 893 N.W.2d 232.

¶21 Benitez's claim that his statements to hospital staff should be suppressed because the police presence violated his right to "confidentiality of his medical records," again unaccompanied by any citation, is similarly baseless. The

notion that police presence in the treatment room violates any statutory right or privilege under WIS. STAT. §§ 146.82 or 905.04, or that the remedy for such a violation would be suppression of evidence, has been flatly rejected by this court. *State v. Thompson*, 222 Wis. 2d 179, 187-91, 585 N.W.2d 905 (Ct. App. 1998). Nor did trial counsel have any valid argument to challenge admission of Benitez's medical records: they were obtained under a valid judge-signed subpoena, and the cover letter shows that there was a certified "request and/or authorization" for them even if it is not in the record now. *See Hagenkord v. State*, 100 Wis. 2d 452, 459-61, 302 N.W.2d 421 (1981). Failure to make meritless arguments is not deficient performance. *See State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110.

¶22     Fourth, Benitez's claim that his statements were involuntary lacks specificity and is based on a misstatement of the law. The mere existence of severe physical pain or injury is insufficient to render a statement involuntary. *State v. Clappes*, 136 Wis. 2d 222, 240, 401 N.W.2d 759 (1987). Rather, there must be "'some affirmative evidence of improper police practices deliberately used to procure a confession.'" *State v. Moore*, 2015 WI 54, ¶56, 363 Wis. 2d 376, 864 N.W.2d 827 (quoted source omitted). Benitez has failed to point to anything even suggesting any improper police practices deliberately used to procure a confession, and therefore he has failed to show that a suppression motion on this ground could have succeeded.

¶23     Fifth, we agree with the State that Benitez fails to come to grips with an obvious strategic reason for trial counsel not moving to suppress these statements even if they could be characterized as resulting from custodial interrogation: it was objectively reasonable for trial counsel to see an advantage in allowing the jury to hear these statements because he repeatedly contradicted himself and asked the

police the same questions over and over again. This evidence supporting a finding that Benitez was genuinely confused in the aftermath of the crash was used by trial counsel in closing to argue for acquittal on the failure-to-render-aid and obstruction charges because it tended to disprove that Benitez knew he had been in an accident and intentionally left the scene.

¶24 While it is true that trial counsel testified he could not remember why he did not seek suppression, "courts may not ... insist counsel confirm every aspect of the strategic basis for his or her actions," *Harrington v. Richter*, 562 U.S. 86, 109 (2011), and the strong presumption of effective assistance means that if counsel cannot remember the precise reason for taking an action, this court must consider whether an objectively reasonable strategy could support the decision. *See id.* Further, Benitez's suppression claim is based on hindsight evaluation of the efficacy of the State's closing argument, which trial counsel could not know before trial.

¶25 Benitez's final argument regarding his statements is that trial counsel was deficient for failing to place them in the "proper context." We reject this assertion as impermissible "'Monday-morning quarterbacking'" that takes issue with trial counsel's failure to conduct the trial in the manner that postconviction counsel now suggests would have been superior. *See Weatherall*, 73 Wis. 2d at 26 (quoted source omitted). To repeat, that is manifestly insufficient to show deficient performance. *See id.*; *see also Strickland*, 466 U.S. at 690.

IV.    *Toxicology Evidence*

¶26 Benitez argues that trial counsel "deficiently handled several critical toxicology issues" that would have supported the theory that he was not intoxicated when he operated the car. These issues include expert retrograde extrapolation testimony, testimony about Benitez's hospital blood test result, the results of a re-

test for THC, and the results of testing showing an absence of the cocaethylene metabolite.

¶27 We reject these claims primarily because, as the postconviction court recognized, they would require a determination that trial counsel was ineffective for focusing on the defense that Benitez was not driving at the time of the crash, and not presenting to the jury the inconsistent argument that even if Benitez was driving, he was not intoxicated. The postconviction court determined that trial counsel "made a strategic decision to more narrowly focus the defense at trial" on the lack of evidence proving that Benitez was the driver. The court found that this strategy was reasonable and therefore, all of Benitez's claims about how trial counsel should have "handled" the toxicology evidence were meritless. It is well settled that "[t]rial counsel is not required to dilute the persuasiveness of his chosen defense by accompanying it with a defense that is inconsistent as well as untenable." *Kain v. State*, 48 Wis. 2d 212, 221, 179 N.W.2d 777 (1970). Trial counsel was not required to choose the defense now advocated by postconviction counsel, nor was he required to be omniscient or infallible. Once again, Benitez's arguments are impermissibly based on hindsight and ignore the objective reasonableness of decisions made from trial counsel's perspective before and during trial.

¶28 Benitez points to trial counsel's *Machner* testimony indicating that he did not have a strategic reason for each and every one of his toxicology-related decisions. We agree with the State that, as to each claim of toxicology-related error, Benitez selects only bits and pieces and argues that trial counsel should have done things differently, whether by asking different questions or presenting different evidence. For our purposes, what matters is that trial counsel made a reasonable decision to focus Benitez's defense on the element of operation rather than intoxication. Given the strong presumption of effectiveness that we must afford

13

both trial and original postconviction counsel, along with each counsel's *Machner* testimony concerning Benitez's toxicology-related issues, Benitez has not met his burden.

¶29    We also reject Benitez's attempt to take this out of the realm of trial counsel's strategy by positing that the toxicology issues he raises are probative on the issue of operation, not just intoxication. Here, he claims that "the more impaired Benitez appeared to be, the more likely he was the driver." We agree with the State that Benitez cannot transform the toxicology evidence into occupant-placement evidence in order to give his ineffectiveness claims some force.

¶30    Having explained our primary and sufficient reason for rejecting these claims, we briefly address why his toxicology claims in particular lack merit.

¶31    Benitez argues that trial counsel should have challenged the expert retrograde extrapolation testimony, which included the opinion that his blood alcohol concentration (BAC) was between .071 and .123 at the time of the crash. However, as Benitez himself acknowledges, this court has rejected his precise argument—that a single data point is not enough to render an opinion. *See State v. Giese*, 2014 WI App 92, ¶¶24-28, 356 Wis. 2d 796, 854 N.W.2d 687. As to his assertion that trial counsel should have decided against calling Dr. Kenneth Kudsk as a witness because he ended up testifying that Benitez had a .10 BAC at 6:30 p.m., this is simply more Monday-morning-quarterbacking by postconviction counsel. Concerning the allegedly exculpatory blood test results that were either not admitted (THC re-test), or not highlighted to the degree that postconviction counsel suggests would have been optimal (cocaethylene), neither was particularly consequential given the undisputed and detectable presence of benzoylecgonine, another restricted controlled substance or metabolite detected in Benitez's blood.

## V.    Failure to Challenge Benitez's Arrest.

¶32    Benitez argues that "failing to challenge [his] arrest was deficient and prejudicial," but does not develop his argument. Instead, he simply asserts that Officer Hauda lacked probable cause to arrest him at 8:12 p.m., and that the results of his blood test should have been suppressed. Benitez's failure to develop an argument on either **Strickland** prong is fatal to this claim. *See **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶33    At any rate, even if developed the argument would be meritless. Probable cause to arrest requires only that the "arresting officer have sufficient knowledge at the time of the arrest to 'lead a reasonable police officer to believe that the defendant probably committed or was committing a crime.'" **State v. Young**, 2006 WI 98, ¶22, 294 Wis. 2d 1, 717 N.W.2d 729 (quoted source omitted). Officer Hauda was not required to draw all the inferences in Benitez's favor, as he now does on appeal. Further, under the collective knowledge doctrine, probable cause for Benitez's arrest also rested on all of Hauda's colleagues' observations: (1) that Benitez made suspicious statements, was agitated, and had left the scene; (2) that the driver's side of the car was the least damaged and Benitez had survived, while everyone else who had been in the car was dead; (3) that Benitez was found with his lower body on the driver's side; (4) that the scene was littered with beer cans; and (5) that Benitez smelled of alcohol. *See **State v. Alexander**, 2005 WI App 231, ¶13, 287 Wis. 2d 645, 706 N.W.2d 191.

¶34    In sum, there was sufficient evidence to allow a reasonable officer to believe Benitez had probably committed a crime even before he was transported away from the scene. Counsel's failure to bring a motion that would have been denied is neither deficient nor prejudicial. **Ziebart**, 268 Wis. 2d 468, ¶14.

*VI.    Denial of Motion for Additional Airbag Fiber Testing.*

¶35    Ordinarily, a criminal defendant is not entitled to discovery beyond that which the prosecutor is statutorily and constitutionally required to disclose. *State v. K. Harris*, 2004 WI 64, ¶16, 272 Wis. 2d 80, 680 N.W.2d 737; *State v. O'Brien*, 223 Wis. 2d 303, 319, 588 N.W.2d 8 (1999). WISCONSIN STAT. § 971.23 provides a defendant with pretrial discovery rights. There is no statute providing for postconviction discovery. *O'Brien*, 223 Wis. 2d at 319.

¶36    *O'Brien* recognizes a limited right to postconviction discovery, under which a defendant may have a due process right to postconviction discovery if the evidence sought is relevant to an issue of consequence. *Id.* Evidence is relevant to an issue of consequence "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 320-21 (quoted source omitted).

¶37    Benitez has not shown that the testing of fibers on the driver's airbag against the four victims' clothing "probably would have changed the outcome of the trial." *Id.* at 321. As discussed above, the airbag fiber testing already showed that none of the fibers on the driver's side airbag were consistent with Benitez's clothing. Additionally, this was a rollover crash that was violent enough to result in four fatalities. Expert testimony that certainly comports with common sense would have readily supported jury findings that in the course of, and the aftermath of, this rollover crash, with unrestrained occupants and multiple responders on the scene, fiber evidence could end up nearly anywhere.

*By the Court*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.