COURT OF APPEALS
DECISION
DATED AND FILED

January 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP149-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF497

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JAMES WALTER WARREN,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County: L. EDWARD STENGEL and SAMANTHA R. BASTIL, Judges.[1] *Affirmed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

---

[1] The Honorable L. Edward Stengel entered the judgment, and the Honorable Samantha R. Bastil entered the order.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. James Walter Warren appeals from a judgment entered after a jury found him guilty of one count of repeated sexual assault of the same child, contrary to WIS. STAT. § 948.025(1)(d) (2021-22).[2]  He also appeals from a postconviction order denying his claim that his trial counsel provided ineffective assistance.  Warren argues that his trial counsel's ineffective assistance requires reversal of the judgment and order.  We affirm.

## BACKGROUND

¶2     In January 2020, a jury convicted Warren of repeated sexual assault of the same child for three assaults.  The victim, T.C., was the child of Warren's life-long friend, Jason.[3]  Jason's fiancée, Valerie, was like a stepmother to T.C. The first assault occurred at a hotel while on a family trip; the second assault was at T.C.'s home while Jason and Valerie were gone picking up food; and the third assault was at a movie theater where Warren had taken T.C. to see a movie.

¶3     After judgment was entered, Warren filed a postconviction motion alleging his trial counsel provided ineffective assistance.  After a *Machner* hearing,[4] during which both trial counsel and Warren testified, the circuit court denied the motion.  Warren appeals.

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[3] We use pseudonyms to refer to T.C.'s father and the father's fiancée.  *See* WIS. STAT. RULE 809.86.

[4] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

*DISCUSSION*

¶4 Warren contends the circuit court erred in denying his postconviction motion. He asks us to reverse the judgment and order and remand for a new trial because he believes his trial counsel gave him ineffective assistance. Warren alleges six instances he argues constitute ineffective assistance by his trial counsel: (1) failure to investigate and use the "ultimatum" defense; (2) failure to hire a forensic expert; (3) stipulating to the admission of the victim's forensic interview; (4) failure to make *Haseltine*[5] objections or to object to questions calling for the witness to speculate about T.C.'s feelings; (5) an ineffective closing argument; and (6) failure to fully prepare Warren to testify.

¶5 The Sixth Amendment[6] guarantees a defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both "'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defen[dant].'" *Savage*, 395 Wis. 2d 1, ¶27 (quoting *Strickland*, 466 U.S. at 687). We review an ineffective assistance of counsel claim using a mixed standard of review. *Savage*, 395 Wis. 2d 1, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.* If the defendant fails to establish either prong, we need not address the other. *Id.* To

---

[5] *See State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984).

[6] U.S. CONST. amend. VI.

3

demonstrate deficient performance, the defendant must show that his or her attorney "made errors so serious that he or she was not functioning as the 'counsel' guaranteed … by the Sixth Amendment." *Id.*, ¶28 (quoting *Strickland*, 466 U.S. at 687). We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Savage*, 395 Wis. 2d 1, ¶28. Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶6    "Additionally, '[c]ounsel's decisions in choosing a trial strategy are to be given great deference.'" *State v. Breitzman*, 2017 WI 100, ¶38, 378 Wis. 2d 431, 904 N.W.2d 93 (alteration in original; quoted source omitted). "If trial counsel testifies at the *Machner* hearing that the choice under attack was based on a trial strategy, which the circuit court finds reasonable, it is 'virtually unassailable' and the ineffective assistance claim fails." *State v. Sholar*, 2018 WI 53, ¶54, 381 Wis. 2d 560, 912 N.W.2d 89.

¶7    First, Warren believes his trial counsel acted deficiently by failing to investigate what he believes was the better defense—the "ultimatum" defense. Warren told his trial counsel that T.C. was falsely accusing him of sexual assault because Warren had loaned Jason large sums of money and had recently demanded that Jason pay back at least $2,000 within thirty days. Warren had told Jason if he failed to repay the money, Warren would notify the police that Jason was dealing drugs. Warren argued that trial counsel failed to investigate this defense and failed to contact his friends who knew about the loans. He also said trial counsel's decision to not have his friend, Anthony Kufalk, testify at trial about the loan was deficient performance.

4

¶8      The circuit court found that trial counsel had thirty years' experience practicing criminal law and that counsel's testimony at the *Machner* hearing was credible. The court found that trial counsel's decision to use what counsel saw as a stronger defense theory (that the victim was a known liar) instead of the ultimatum defense was a reasonable strategic decision and that counsel had rational reasons for choosing the former defense over the latter. Counsel testified that he would have only called Kufalk as a witness if the liar defense did not go well, but counsel believed the jury would acquit based on the testimony and evidence presented, so Kufalk was not called. The Record supports the court's findings.

¶9      Trial counsel testified at the *Machner* hearing that he had considered the ultimatum defense "a strong defense" initially, but "later felt otherwise." He had learned that T.C. was a known liar, and they had discovered a number of specific instances where they could show that to the jury. Additionally, they had discovered strong evidence to show that T.C. was lying about the hotel and movie theater assaults. For example, although T.C. had said he was alone with Warren in the hotel room, T.C.'s friend, Gavin, testified that he (Gavin) was in Warren's room the entire time before T.C. came to the room and that after that point, he (Gavin) never left T.C.'s side. T.C. had also said that the movie theater had only five people in it when the assault occurred, but the defense had obtained records to show that over eighty tickets had been purchased for that particular movie. Further, trial counsel testified that there were problems with the ultimatum defense—including the lack of receipts or bank records to document the loans Warren said he made to Jason—and that questioning Jason about the loans during his testimony would have diverted the efforts to focus on T.C. as "a liar" who "made it up to get out of whatever trouble he might have been in[.]" Counsel

testified that he had investigated the drug-dealing aspect, but that was "even weaker." He found "no evidence of any drugs" and had concerns that putting drug dealing in front of the jury would be "really stretching" and could also reflect poorly on Warren. Counsel testified that he feared it would look like Warren concocted the loan story—detracting from the strong defense they did have. In trial counsel's opinion, they did not have enough proof of the ultimatum defense, and it "wasn't going to work" because it would "look like he made it up or he was throwing things to see what sticks[.]"

¶10 The circuit court's finding about trial counsel's choice regarding the defense theory was not clearly erroneous. *See Savage*, 395 Wis. 2d 1, ¶25. An experienced attorney's decision to not pursue a defense for which he did not have sufficient proof is a reasonable strategic choice that does not constitute deficient performance.[7] *See Breitzman*, 378 Wis. 2d 431, ¶65 ("Reviewing courts should be 'highly deferential' to counsel's strategic decisions and make 'every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" (omission in original; quoted source omitted)); *Weatherall v. State*, 73 Wis. 2d 22, 26, 242 N.W.2d 220 (1976) ("In deciding upon trial tactics, '... [I]t is the considered judgment of trial counsel that makes the

---

[7] Warren also complained that his trial counsel did not bring up the loans to Jason after the State asked Warren about it during his testimony. Again, trial counsel had good strategic reasons for not doing so. Trial counsel testified at the *Machner* hearing that he did not "want to get into that" and "tried to stay away from that on purpose because the problem is the loans and the gifts -- and, you know, there was evidence that [Warren] gave larger gifts to T.C." Counsel feared that if he focused on the gifts and the loans, the State would twist that into Warren trying to "groom" T.C., which would be "problematic," and it would detract from the strong defense they had presented. This was a reasonable trial strategy and not deficient performance. *See State v. Mull*, 2023 WI 26, ¶49, 406 Wis. 2d 491, 987 N.W.2d 707 ("That a different trial strategy may look better in hindsight does not render a reasonable strategy deficient performance.")

selection among available defenses, not the retroactive conclusion of postconviction counsel.'" (omission and alteration in original)).

¶11 Second, Warren contends his trial counsel acted deficiently by not hiring a forensic expert to counter the State's forensic expert witness. The circuit court found, based on trial counsel's credible testimony, that it was a reasonable strategy to forgo hiring a defense forensic expert witness. It indicated that counsel's explanation was that he wanted the focus to be on T.C.'s untruthfulness, rather than trying to "nitpick" the State's forensic expert's interview of T.C. The Record supports the court's finding.

¶12 Trial counsel testified at the *Machner* hearing that he hires an expert when he thinks the expert will be helpful to the defense. He did not believe it was necessary here, particularly since the defense theory about T.C. being a liar was strong, and he had evidence to show that two of the three incidents "by logic … couldn't have happened." He testified that hiring a forensic expert would have detracted from the "strong defense" that he "thought was a defense that would gain acquittal[.]" The defense strategy was to have a clear, single message, and he did not want to "muddle it with" the forensic experts. Counsel also testified that he had learned that the forensic expert the State used was generally well-respected and "seem[ed] to keep it within the lines of where she's supposed to be."

¶13 The circuit court's finding about trial counsel's strategic choice regarding the expert was not clearly erroneous. *See Savage*, 395 Wis. 2d 1, ¶25. We will not sit as a "Monday-morning quarterback[]" and second-guess the reasonable strategic choices that were made at the time of trial. *See Weatherall*, 73 Wis. 2d at 25-26.

7

¶14 Third, Warren argues his trial counsel's decision to stipulate to the forensic video being played at trial was deficient performance. The circuit court found the reasons trial counsel gave for stipulating to allowing the forensic video to be played for the jury to be sound. The Record supports the court's finding.

¶15 Trial counsel explained his decision on the video at the *Machner* hearing. He testified that, after discussing it with Warren, counsel made the strategic decision to let the video in because doing so would mean he could start his cross-examination of T.C. without allowing "the State [to] start out with softball questions, warm up the child[.]" He further noted that after having a chance to review the entire video, he did not think it contained anything objectionable. T.C. talked only about the three incidents, and counsel believed that two of the incidents T.C. reported were demonstrably false. He wanted the jury to hear how T.C. stated in the video that there were only five people in the theater and then hear that T.C.'s statement was not true. By using the video instead of having the State ask live questions, T.C.'s testimony on direct was "locked in[.]" Counsel explained:

> And I know I could hit him then [on cross-examination], and if the State tries to dance later, I could start doing the -- asked and answered because their presentation was the video, mine was the cross, and now they're trying to get into new stuff, and I could possibly keep the lid on things. I liked what was on the video because I thought we could credibly dispute, with facts and evidence and exhibits, things that were in the video to show it was untrue.

¶16 The circuit court's finding about trial counsel's strategic choice to stipulate to showing the video was not clearly erroneous. *See Savage*, 395 Wis. 2d 1, ¶25. We will not second-guess trial counsel's strategic choice. *See Weatherall*, 73 Wis. 2d at 25-26.

¶17 Fourth, Warren believes his trial counsel acted deficiently by failing to make *Haseltine* objections or object to questions calling for speculation about T.C.'s feelings. Specifically, Warren says trial counsel should have objected when the State asked Valerie a follow-up question after she had said T.C. felt "terrible" when he reported the assaults to Jason. The question and answer at issue was:

Q Do you know why he felt terrible? Did he express that to you?

A No. I don't know if it was because he had waited so long to tell us or if it was just having had bottled it up for so long that it finally got to him. I'm not sure.

¶18 Warren also believed trial counsel should have objected when the State asked Jason about how T.C. was feeling:

Q What was his emotion like?

A More fear, I guess. I don't think he wanted to disappoint me because he knows how close Jim and I are. I just think he was scared. I think he thought I was going to be mad at him.

Warren argued trial counsel should have objected because these questions and answers violated *Haseltine* or called for speculation.

¶19 The circuit court found that trial counsel's decisions to object or not to object were reasonable strategic decisions. The Record supports this finding. At the *Machner* hearing, trial counsel testified that if he thought it was beneficial to object, he would have and that sometimes he chooses to not object for strategic reasons—that is, he would not want to draw attention to it because then it stays with the jurors and he did not want to highlight something that might help the

9

State. He also testified that he "was very prepared, and I don't think I would have stood by if I didn't have a reason to let it slip by."[8]

¶20    The circuit court did not address *Haseltine*, but even if these questions implicated *Haseltine*, trial counsel explained that he made the strategic choice *not* to object so as to avoid having this information stick in the jurors' minds.[9] As the court found, this was a reasonable strategy, and we will not reverse based on hindsight. *See **State v. Mull***, 2023 WI 26, ¶49, 406 Wis. 2d 491, 987 N.W.2d 707 ("That a different trial strategy may look better in hindsight does not render a reasonable strategy deficient performance.").

¶21    Fifth, Warren contends his trial counsel's closing argument constituted deficient performance. Specifically, he faults his counsel for making statements he believes imply that he is guilty. One instance involved the movie ticket stub that Warren kept, which was introduced into evidence. The State

---

[8] In his brief, Warren points to a third question he thought trial counsel should have objected to during Detective Cameron Stewart's testimony, but Warren did not ask trial counsel about Stewart's question during the *Machner* hearing and therefore has forfeited the right to challenge it on appeal. *See **State v. Curtis***, 218 Wis. 2d 550, 554, 582 N.W.2d 409 (Ct. App. 1998) ("The hearing is important not only to give trial counsel a chance to explain his or her actions, but also to allow the trial court, which is in the best position to judge counsel's performance, to rule on the motion.").

This court also notes that, in his brief, Warren failed to provide a Record reference to Valerie's testimony, which is required by the appellate rules. *See* WIS. STAT. RULE 809.19(1). "We have no duty to scour the record to review arguments unaccompanied by adequate record citation[s]" and could refuse to consider Warren's claim on that basis. *See **Roy v. St. Lukes Med. Ctr.***, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

[9] The State, citing ***State v. Snider***, 2003 WI App 172, ¶27, 266 Wis. 2d 830, 668 N.W.2d 784, asserts that these particular questions do not implicate *Haseltine* at all because they are "related to a witness's assessment of another person's truthfulness before trial." It is unnecessary for us to resolve this dispute because we have concluded that trial counsel's decision was based on reasonable strategic choices.

argued the ticket stub was a "souvenir" of the sexual assault. Warren testified that he kept the stub because he just keeps those things. Trial counsel's closing argument on this point was:

> The movie. That one, the timeline is pretty darn good. Thankfully for [Warren], kind of a pack rat. He throws his stuff down when he gets home, and he has receipts. He has stubs from concerts or movies he has gone to. It's not a souvenir. A souvenir, he would probably have a key card from the hotel or something else.

Trial counsel then moved into T.C.'s untruthful statements about the number of people in the theater, the theater's seat arrangements, and other facts to discredit T.C.'s account of an assault occurring in the theater.

¶22 The other instance Warren thinks was deficient was his trial counsel's statement regarding the State's forensic expert witness. During the closing, counsel said:

> Now it's horrible, of course, to be a victim if it really happened. And I'm not suggesting there is not a lot of victims of sexual assault. In fact, I think when [the State's forensic expert witness] talks to the people, probably the vast majority of people she's talking to were sexually assaulted. And that's got to get to her emotionally. Even though she tried to insinuate it wasn't a matter at all. Because it's got to be hard to do that job.

¶23 The circuit court concluded that the closing argument was not deficient performance—that maybe in retrospect, trial counsel could have said things differently, but it did not rise to being deficient. We agree with the circuit court.

¶24 Trial counsel testified about both instances at the *Machner* hearing. Regarding the ticket stub, counsel testified that maybe he could have done a better job regarding the State's referring to the ticket stub as a souvenir, but he wanted to

11

rebut it, and he only had a few minutes to figure out how to do that. Counsel was trying to convince the jury that Warren saves all his ticket stubs, and therefore having the ticket stub from the movie with T.C. was not a souvenir. This was *not* a concession of guilt. It was an attempt to rebut the State's allegation that the ticket stub was a souvenir. Regarding the comment that the "vast majority" of the State's forensic expert's interviewees have been sexually assaulted, trial counsel's *Machner* testimony strongly disagreed that this was a "risky comment and almost an admission[.]" Counsel testified:

> I disagree, I don't think that it was risky, and I'm sure I followed up with something similar to, but it may be true most of the time, but [Warren] didn't sexually assault this kid. I -- you know, because the net argument would have been, he didn't do this, and the jury -- it is statistically true most of the time they're making -- they're not making it up, but this kid did make it up. That's what I was trying to point out, there's a difference, and that way -- I was trying to neutralize what damage [the State's forensic expert] may have done to the case.

¶25 Trial counsel provided a reasonable explanation for both challenged instances. He wanted to rebut the State's suggestion that Warren retained the ticket stub as a souvenir, and he wanted to acknowledge that child sexual assaults do occur, but used both instances to emphasize that Warren did not assault T.C. An attorney need not be perfect to render effective assistance, and pointing to a couple instances in a very lengthy closing argument that could have been articulated differently does not rise to deficient performance. *See State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 ("Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." (quoted source omitted)). It is clear from our review of the trial transcripts and the *Machner* hearing that Warren's trial counsel believed his client was innocent and made choices based on the facts that he thought would lead to an acquittal. The

fact that the choices trial counsel made did not result in an acquittal does not render those choices deficient.

¶26     Sixth, Warren contends his trial counsel performed deficiently by failing to fully prepare him to testify.  The circuit court rejected Warren's contention and found that trial counsel "adequately prepared Mr. Warren for testimony."  The Record supports this finding.

¶27     Trial counsel testified that he spent "a lot of hours talking" to Warren about the case, which included "whether or not he wanted to testify[.]"  Counsel said he waits until all the evidence comes in before making the decision about the client testifying, but that he definitely talked about it with Warren.  He testified that Warren knew the facts of his case extremely well, and that his testimony would simply be that he "didn't do this[.]"

¶28     Further, before Warren took the stand at trial, the circuit court engaged him in a colloquy about testifying, which included the following questions and answers:

> THE COURT:  And again I ask you, do you feel like you have had enough time to discuss the matter with your attorney?
>
> MR. WARREN:  Yes.
>
> THE COURT:  And do you feel like you need anymore time at this point?
>
> MR. WARREN:  No.[10]

---

[10] This colloquy occurred *after* the circuit court had already given Warren time to privately consult with his attorney.

13

¶29     If Warren felt unprepared, the time to say so was when the circuit court asked.  Warren has failed to establish that his trial counsel acted ineffectively with regard to preparing him to testify.  Having concluded that there is no merit to any of Warren's claims that his trial counsel provided ineffective assistance, we must affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.